(117 So. 725)

No. 29308.

HILL v. WM. P. ROSS, Inc., et al.

June 4, 1928.

Hyman Mithoff, of New Orleans, for appellant.

Bonnie B. Moses, of New Orleans, for appellee R. L. Crager.

L. R. Hoover, of New Orleans, for appellee Wm. P. Ross, Inc.

ST. PAUL, J. In 1908 Elias Paillet sold to the Southern Land Company a tract of land measuring about 500 feet along Poplar street to the south, and running north about one mile between the property of Tulane University on the east and the lower line of Carrollton to the west; at which point it measured about 300 in width along the line of the Marley property.

The Southern Land Company subdivided this tract by running down the center thereof a boulevard which it called Audubon Park Place and dividing the rest of the tract into eight "blocks," four on each side of said boulevard. Block H is on the west of said boulevard at the extreme north end of said tract, and measures about 664 front on said boulevard between Nelson street on the south and Apricot on the north; Apricot street having since been opened at or near the Marley line.

Lot 44 of block H (now called lot X, on account of some changes caused by the opening of Apricot street) is the lot about which the present controversy arises. It adjoins lots 40 and 42, and measures 34 feet front on the boulevard by about 102 feet in depth and fronts on Apricot street.

Lots 10 and 12 of block H belong to plaintiff and are about 450 feet distant from lot 44 (or X).

## I.

When the Southern Land Company sold off the lots in said tract, it inserted in each conveyance certain restrictions, of which the following is the only one pertinent to the issues involved in this case, to wit, *"neither the present purchaser, nor his heirs or assigns, shall*

*ever erect any building on said lots less than 60 feet thereof in frontage."*

## II.

Lots 10 and 12 measuring together 60 feet front on said boulevard were sold, subject to said restrictions, and in due course came, through mesne conveyances, to be the property of plaintiff.

## III.

■ Lots 40, 42, and 44, measuring together 94 feet front on said boulevard, were sold, subject to said restrictions, and in due course, by mesne conveyances, came to be the property of the Jackson Homestead Association.

It does not appear from the record just how the Jackson Homestead Association disposed of lots 40 and 42 measuring together 60 feet front on said boulevard, but these two lots appear now to be the property of one Warren. But the Jackson Homestead Association sold lot 44 (now lot X), measuring only 34 feet front on said boulevard, to one Carl Froeba, and in due course said lot became, by mesne conveyances, the property of the defendant Wm. P. Ross, Incorporated. So that said defendant does not own any lot or lots having full 60 feet front on said boulevard; and it is therefore clear that no building can be erected thereon, if the restrictions be such as can be validly imposed on lands in this state. For it is clear that one to whom sufficient frontage has been sold in the beginning (94 feet), cannot defeat the object of the restriction by afterwards selling off the land in smaller parcels; and it is therefore idle to say that said restrictions do not apply to this lot.

## IV.

■ In Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L. R. A. 1916B, 1201, Ann. Cas. 1916D, 1248, it was held that such restrictions, in contracts between individuals, are not unlawful in this state; that they are not personal to the vendor but inure to the benefit of all other grantees under a general plan of development, and are covenants running with the land; that the remedy of the other grantees is by injunction to prevent a violation of the restrictions by any one of them.

Hence it follows that unless the other grantees under the aforementioned general plan of development have waived said restrictions, they may be enforced by any one of said grantees near enough to be affected thereby; and in the present instance plaintiff, whose property is in the very same "block" as lot 44 (now lot X), and only 450 feet away therefrom, is sufficiently near to be affected by any violation of said restrictions on the part of the owner of said lot 44.

## V.

The purpose of the present suit is to enjoin the owner of lot 44, and a prospective purchaser from him, from erecting any building on said lot in violation of said restriction. The trial judge refused the injunction, and plaintiff has appealed. We do not know on what grounds the injunction was refused, and on our part we see none on which it should have been.

## VI.

The contention is made that plaintiff has waived said restrictions by not heretofore protesting against the erection of some five or six buildings on lots of less than 60 feet frontage on said boulevard, during the last five or six years; i. e., on lots having only 45 feet frontage.

■ But the question of intention to waive such a restriction is one of fact, and "a breach of a restriction by one purchaser must be such as to substantially defeat the object of the general scheme, in order to make consent to the breach, or acquiescence in it, amount to release of the restrictions as against other purchasers." Thompson on Real Property, vol. 4, p. 557, citing German v. Chapman, 7 Ch. Div. 271 (Eng.) and other authorities.

■ And a breach of the restrictions in some five or six instances, out of some 300

lots involved in the general scheme, is not such a breach as to substantially defeat the object of the whole scheme, and hence an acquiescence therein is not such a general abandonment of the whole scheme as will amount to a release of the restrictions as to all future cases.

In Parker v. Nightingale, 6 Allen (Mass.) 341, 83 Am. Dec. 632, an injunction actually issued in the case, and the final paragraph of the opinion (relied on by defendant) is merely a dictum that circumstances might exist which might warrant the refusal of an injunction; and this may be conceded, as in the following cases:

In Ocean City Land Co. v. Weber, 83 N. J. Eq. 476, 91 A. 600, the evidence showed that the restrictions had been *almost universally disregarded by all parties*. In Scharer v. Pantler, 127 Mo. App. 433, 105 S. W. 668, the parties had all of them proceeded as if no restrictions had ever existed, and, "one and all," had either abandoned them or willfully violated them for many years past. .

These cases have no application here.

### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that an injunction now issue herein as prayed for; defendant to pay all costs of both courts.

O'NIELL, C. J., dissents.