In a written opinion the lower court has correctly set forth the issues in this case and has arrived at a correct conclusion in determining some of the issues. Its opinion is as follows:
"This is an injunction suit to enforce certain building restrictions in a deed from the South Highland Company, Inc., the subdivider of Unit No. 1 of the Broadmoor Subdivision. The pertinent restrictions referred to which affect all of the property in Unit No. 1 are as follows:
"`On the balance of the subdivision no dwelling shall be built costing less than $4000.00, unless special permission shall be obtained from the Council of the Town of South Highlands, and all dwellings shall be at least 40 feet from the front property *Page 657 
line. All out buildings shall be not less than 30 feet from the side property lines along side streets.
"`If plots herein purchased are shown on the map as subdivided into four plots, purchaser and assigns shall have the privilege of selling off any lot or lots that they so desire. It is provided, however, that not more than one dwelling shall be built on any one lot. It is further understood that all dwellings shall be built on said lots and plots shall face streets according to map of this subdivision and that such plots as are not shown as subdivided in map shall remain intact in all future transfers, unless special permission is secured from the Council of the Town of South Highlands.'
"The defendant, Mrs. Wiseman, derived her title in 1924 while married to the defendant, Fred A. Wiseman. The deed contained the restrictions sought to be enforced.
"The construction which the plaintiffs are seeking to enjoin is the building of a house on the rear of Lots C and D of Plot 186, Broadmoor Subdivision, Unit No. 1, which lies on the southwest corner of said plot at the intersection of Albany Street and Atlantic Avenue.
"The specific violations alleged by the plaintiffs, who are property owners in the immediate vicinity, are as follows:
"(a) The house fronts on Albany Street, a side street, instead of Atlantic Avenue and is within 6 feet of Atlantic Avenue, instead of 40 feet; (b) the house will cost less than $4,000.00; and (c) the foundation of the house rests upon parts of both Lots C and D of Plot 186 in a cross-wise manner and faces Albany Street under an illegal re-subdivision of Plot 186, that is, one without the approval of the City Council of the City of Shreveport.
"The defendant filed a motion to dissolve the restraining order, which was issued to prevent the completion of the construction, which had begun, while the trial of the rule to show cause why a preliminary injunction should not issue was pending, on the grounds that the allegations of the petition were untrue; that the uniform interpretation of the restrictions, insofar as they apply to corner lots, was that a house built thereon could face either street; that such interpretation had been carried out and buildings constructed facing side streets without objection from the plaintiff or others, and that the plaintiffs, by their silence, inaction and acquiescence are now estopped to assert a contrary interpretation.
"The defendants further set up in their answer that the plaintiffs and others, by their silence and inaction during the re-subdivision of corner plots in Broadmoor Unit No. 1, had abandoned by universal and common consent the restrictions imposed by the original subdivision.
"By agreement of counsel the case was tried on the motion to dissolve the temporary restraining order; the application for a preliminary injunction; plea of estoppel and the application for a permanent injunction.
"The evidence discloses that at the time the suit was filed the defendants intended to build a house in compliance with the restrictive clause in the deed as to the cost of construction; that is, $4,000.00, or in excess thereof, which fact disposes of paragraph `b' of the violations complained of as set forth above.
"The evidence, however, conclusively shows that the complaints set up in paragraphs a and c are well founded. The foundation of the residence, which had been laid, clearly indicates that it will front on Albany Street and its side will be within 6 feet of Atlantic Avenue, and that the re-subdivision of Plot 186 was done without the approval of the City Council of the City of Shreveport, which Council succeeded to the rights and obligations of the Town Council of South Highlands.
"The original subdivisions of Plot 186 resulted in approximately 131 feet front on Ockley Drive; 144 feet front on Atlantic; 268 feet depth on Albany Street and 251 feet depth on the east boundary where the plot became contiguous to and adjoined the property of the plaintiff, Edwards. The plot was divided into four lots designated as A, B, C and D. Lots A and B front on Ockley Drive. Lots C and D face Atlantic Avenue, an unimproved but legally dedicated street 60 feet wide, which at present is the southern boundary of the City of Shreveport. No buildings have been constructed facing Atlantic Avenue. The foundation of the residence, the construction of which is sought to be enjoined, rests partly on Lots C and D and fronts on Albany, an improved side street, in contravention of the restriction that `all dwellings shall be built on said lots and plots shall face streets according to map of this subdivision.' *Page 658 
"The foundation of the dwelling in question is only 6 feet from the front property line, which is Atlantic Avenue, in violation of the covenant in the deed, — `all dwellings shall be at least 40 feet from the front property line.'
"It is clear, we think, that the injunction should issue unless the pleas of estoppel or abandonment should be sustained.
"The defendants adduced evidence to show that other violations of a similar character had occurred in other sections of Broadmoor Subdivision Unit No. 1, some of which, however, had the sanction and approval of the City Council in compliance with the restrictions, and many were remote from Plot 186.
"Estoppel is an equitable remedy and is not favored in law and is not permitted to defeat the administration of law, and cannot be sustained by argument or inference, but must be supported by the established fact that the pleaders were misled by relying on the misrepresentations of the plaintiffs which caused them to change their position to their injury.
"The evidence before us is not sufficient to support the plea of estoppel.
"On the question of abandonment, defendants allege that by common consent corner lots in the subdivision, and particularly corner lots on Albany Street, have been re-subdivided by numerous persons in the same manner as defendants have done, and consequently that has been an abandonment of any building restrictions in conflict therewith.
"The fallacy of that theory is that the defendants are trying to include all re-subdivisions in the Unit in an attempt to show abandonment. All of the disclosed re-subdivisions are not violations of the restrictions, but only those re-subdivisions of plots not already divided into lots without securing special permission from the Governing body of the Municipality.
"In the case before us it is undisputed that the defendants did not secure approval of the City Council. Therefore, the only re-subdivisions that can be considered on the issue of abandonment are those like that of Plot 186, that is, those made without special permission and which changed the facing of the lots.
"Mr. Barnes, City Engineer, defendants' witness, testified that he found 23 re-subdivisions which altered the facing of the lots. Of that number, he testified that only 13 had not been approved by the Council. So, according to his testimony, there are only 13 re-subdivisions similar to Plot 186.
"Mr. Anderson, a deputy clerk of court, defendants' witness, testified that there had been only 17 plots re-subdivided in all of Broadmoor Subdivision Unit No. 1 without the approval of the Council. He made no distinction between those which changed the facing of the lots and those which did not, nor between corner lots and inside lots. In other words, he testified that his records (the Public Conveyance Records of Caddo Parish) show only 17 plots in all.
"Therefore, we have before us evidence of only 13 re-subdivisions (or at the very most, 17) in all of Broadmoor Unit No. 1 which are similar to Plot 186. From an examination of the original plat of the subdivision, it will be seen that there are 186 plots and 597 lots in the subdivision. In our opinion, 13 to 17 illegal re-subdivisions out of 186 plots or 597 lots are not sufficient to constitute an abandonment of the original plan of the subdivision, as sought to be preserved by the restrictive covenants, on the authority of the leading Louisiana case cited by both plaintiffs and defendants, — Hill v. Ross, Inc.,166 La. 581 [117 So. 725].
"The defendants do not deny the restrictions, but defend this suit on the interpretation of them. The defendants adduced evidence to show that after three houses were built on the plot, the only way a fourth house could have been built was to face it on Albany, thus violating one of the restrictions. In other words, Mrs. Wiseman, by her own conduct, has placed her property in such a position that she cannot build a fourth house 40 feet from Atlantic Avenue without moving the third one. See Hill v. Ross, Inc., supra.
"For the reasons assigned, the pleas of estoppel and abandonment and the motion to dissolve should be overruled and a permanent injunction issued as prayed for."
Although we do not agree with the final conclusion reached by the lower court, we do agree with its finding that the house under construction by defendant does not violate the $4,000 Clause restriction.
Unit No. 1 of Broadmoor Subdivision consists of 186 plots, each of these plots, with the exception of some few unevenly shaped ones, is divided into four lots. The *Page 659 
east front of the subdivision abuts on Kings Highway, an improved street, which runs in a southeasterly and northwesterly direction. The next street west is an improved street by the name of Anniston, which runs in the same direction and is practically parallel to Kings Highway. Going west the next street is Youree Drive, which runs due north and south. Continuing west, the next street is Akard, also running north and south. Still continuing west, the next street is Albany, which runs north and south on the west side of the subdivision then turns and runs east and west and is the western boundary of the subdivision. The cross-streets, all running practically east and west, beginning at the south boundary of the subdivision, are Atlantic Avenue, which is unimproved and is the south boundary line of the City of Shreveport. The next is Ockley Drive, then Albert and then Albany Avenue. There are two other short streets running east and west in the northeast corner of the Unit which extend from Youree Drive to Kings Highway.
All of the streets, highways and avenues above described are improved, with the exception of Atlantic Avenue. The plot involved in this litigation is No. 186 and is on a corner. It is bound on the north by Ockley Drive, on the south by Atlantic Avenue, on the west by Albany and on the east by plot No. 185, owned by one of the plaintiffs herein, Robert C. Edwards. All the plots in the subdivision, with the exception of those abutting Kings Highway, are equally divided into four lots, A, B, C, and D, two of which face the streets on the north of the lots and two face the streets on the south of the lots. Plots 186 and 185 are so subdivided, each having two lots facing on Ockley Drive and two facing on Atlantic Avenue. There are seven corner plots in the subdivision which had two lots facing on Atlantic Avenue. The eighth corner plot abutting Atlantic Avenue has never been divided into lots and, as we understand, is school property.
The defendant in the case at bar has re-subdivided Plot 186 and erected three houses thereon, two of which face Ockley Drive and one faces Albany Avenue, and had begun the erection of the fourth house on the corner of Albany and Atlantic Avenue facing it on Albany, when the present suit was filed enjoining further construction.
Of the seven corner plots abutting Atlantic Avenue, six of them have been re-subdivided in exactly the same manner as defendant has re-subdivided plot 186 and buildings have been erected thereon, no one of which faces Atlantic Avenue.
Atlantic Avenue has never been improved or used as a street and the main purpose and use made of it is for drainage. It is the only unimproved street in the entire subdivision. The likelihood of its ever being improved is remote for the reason that the southern boundary of this street is the southern boundary of the City of Shreveport and the City is without authority to assess the property to the south of the street for the improvement of it. It is therefore very easy to understand why any one would not want to build a residence facing Atlantic Avenue.
In the entire subdivision, Unit No. 1 of Broadmoor, there are 28 corner plots in all and of these 28, 23 have been re-subdivided and houses erected thereon facing different streets from the streets they were to face, according to the official plat. The lower court took into consideration every plot in the subdivision, including all the inside plots which cannot face any other street other than the one as per the original plat. The inside plots are not similarly situated as are the corner plots and we are of the opinion the lower court was in error in taking into consideration in arriving at its decision, any plots other than corner plots.
We are of the opinion it was also in error in not considering the number of plots which were re-subdivided with the consent and approval of the City Council of Shreveport. What difference can it make by what authority the re-subdivision was made? The fact is the change was made and when a great majority of the plots similarly situated are changed, the original plan is done away with and that is what counts. In the present case we have 23 out of 28 corner plots in the subdivision that have been altered and changed and residences erected thereon facing streets other than as provided on the original plat and map and that, to our mind, constitutes an abandonment of the original scheme as to the facing of the residences, since no protests were made to any of the said changes. This being true, it is certain that none of the plaintiffs in this case can *Page 660 
now complain unless it is Mr. Edwards, for the record fails to disclose that there will be any pecuniary loss to any of the other plaintiffs. Their property will not be made any less valuable by the erection of the dwelling as begun by defendant. But the record does disclose that lots C and D of plot 185, owned by plaintiff Edwards, will be depreciated in value by the erection of the house by defendant in the manner in which it has been started in that it will be so close to the corner that it will obstruct the view from defendant's lots, and the fact that the back of defendant's house will be facing the front yard of any house built in the future by the defendant on lots C and D of plot 185.
The question therefore arises, Has plaintiff Edwards such a property right by reason of the restrictions in the deed that would give him a right in law to complain of defendant's actions in violating the original restrictions under which he purchased, even though the entire scheme of facing houses in certain directions has been abandoned by acquiescing in that being done on 23 of the 28 corner plots similarly situated and on all the corner plots, except this one fronting on Atlantic Avenue? It is certain that if there had never been any restrictions in the deed as to which street the houses should face, no one would have had the right in law to complain about which street a house faced, but when the restriction was put in the deed and plaintiffs bought under said restriction, they acquired a property right, a negative servitude, by reason of said restriction and so long as said restriction remained in effect, any one owning property in the subdivision had the right in law to enforce its observance; but if the restriction had been removed by common consent or abandoned by long acquiescence in its non-observance, then the restriction is no longer in effect. It vanishes and with it goes the property right, the negative servitude owned by those who acquired under it.
We are of the opinion that plaintiff Edwards is now in no better position than he would have been if there had never been any restriction in the deeds as to the streets on which houses should face. He could have protected his servitude but failed to do so. Defendant has already erected a house on plot 186, facing the same way the house under construction is facing, and not a word of protest was heard from any of the plaintiffs, including Mr. Edwards. The rear of that house faces the lots owned by him the same as the rear of the house under construction will face his lots. The only difference is that the house now under construction is nearer the corner and will interfere with his view more than the other house does.
We might further add that any other case where the facing of the houses has been done contrary to restriction, the restriction as to distance from the side street has also been violated and acquiesced in by the other lot owners in the subdivision, and this restriction has likewise been abandoned.
Defendant filed a motion below to dissolve the restraining order issued by the lower court and prayed for damages for attorney's fees. They proved the services were well worth $500 and we are certain from the amount of time and work in this case, the amount is not exorbitant.
It therefore follows that the judgment of the lower court is reversed and the permanent injunction issued herein is dissolved. It is further ordered, adjudged and decreed that there be judgment in favor of the defendant in the sum of $500 for attorney's fees against Robert C. Edwards, T.R. Grafton, Aline M. Schubert, G. Randall Whitmeyer, in solido, and for all costs of this suit in both courts.