3 So.2d 661

**EDWARDS et al. v. WISEMAN et al.**

No. 36171.

June 30, 1941.

Whitmeyer & Richardson and C. J. Bolin, all of Shreveport, for applicant.

Blanchard, Goldstein, Walker & O'Quin, of Shreveport, for respondents.

HIGGINS, Justice.

The plaintiffs, as home owners in Unit No. 1 of Broadmoor Subdivision, City of Shreveport, Parish of Caddo, Louisiana, seek to enforce certain building restriction

clauses against the defendants, the owners of Plot 186 of the said subdivision (which adjoins Plot 185 on which the residence of the plaintiff Edwards is located) by asking the Court for an injunction to restrain the defendants from violating those restrictions.

The defenses are: First, that by contemporaneous construction the plaintiffs and other landowners in the subdivision have construed the building restrictions in such a manner as to give the owners of lots forming the corners of Atlantic Avenue and the intersecting streets the right to face houses built thereon either on Atlantic Avenue or the side streets; second, that since the opening of the subdivision in 1924, the plaintiffs and other home owners therein have acquiesced in the re-subdivision of various plots of land by the owners, and especially, the plots cornering on Atlantic Avenue and the intersecting streets, so that, in each instance, the buildings erected thereon front on side or improved streets and not on Atlantic Avenue, an unimproved street which serves the subdivision only as a drainage canal, and, therefore, by permitting these property owners to face their buildings on the side streets and not on Atlantic Avenue, without objection or protest, there has been a waiver and relinquishment of the building restrictions, in so far as they affect these corner sites; third, that the plaintiffs, and particularly Edwards, are estopped from enforcing the restrictions so as to compel the defendants to front their building on Atlantic Avenue because they purchased Plot 186, which adjoins the Edwards property or Plot 185, on January

14, 1938, after observing that all of the other corner lots similarly situated on Atlantic Avenue had been developed by facing the buildings on the side or improved streets and not on Atlantic Avenue, the unimproved street, contrary to the restrictions, thereby causing the defendants to believe that they might lawfully do the same thing; that the plaintiffs stood by and also failed to protest or object when the defendants, in 1938, re-subdivided Plot 186 in such a manner as to front two lots on Albany Avenue, and thereafter, erected a building on the inside lot facing Albany Avenue, and that, therefore, it is now too late for the plaintiffs to complain after the defendants have actually laid the foundation and erected a substantial part of the building on the corner of Atlantic Avenue facing Albany Avenue.

The trial judge overruled all of the defenses and entered judgment in favor of the plaintiffs on the merits and granted a permanent injunction restraining the defendants from proceeding further with the erection of the building fronting on Albany Avenue.

The defendants appealed and the Court of Appeal of the Second Circuit held there had been such a universal disregard of the building restrictions in so far as plots which cornered on Atlantic Avenue were concerned, by facing buildings on the side streets, that by common consent and acquiescence the restrictions had been released or waived, particularly as the plaintiff Edwards had failed to protest against the erection, by the defendants, of the building facing Albany Avenue. 3 So.2d 655.

The plaintiffs applied to this Court for a writ of certiorari which we granted and the case is now before us for review.

The plaintiffs claim that the defendants are in the process of building and constructing, on the corner of Atlantic and Albany Avenues, a residence, in violation of the restrictions contained in the original deed of Plot 186, dated April 7, 1924, in the following respects: (1) That the foundation for the building, as laid out, fronts on Albany Avenue instead of Atlantic Avenue and is within 6 feet of the latter street, whereas it should be 40 feet from the front property line or Atlantic Avenue; (2) that the foundation rests upon parts of Lots "C" and "D" of Plot 186 in a cross-wise manner, whereas it should be entirely located on one of the lots and should face Atlantic Avenue; and (3) that the building will cost less than $4,000.

■ The law is clear that building restriction clauses constitute real rights, not personal to the vendor, and inure to the benefit of all other grantees under a general plan of development, and are real rights running with the land; and that the remedy of the other grantees to prevent a violation of the restrictions by another is by injunction. Queensborough Land Company v. Cazeaux et al., 136 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann. Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725, and Ouachita Home Site & Realty Co. v. Collie et al., 189 La. 521, 179 So. 841.

■ The defendants first contend that the Court should give a practical or common sense interpretation to the building restriction clauses and not a technical one,

because even the original developer of the property re-subdivided corner plots so as to face them on side streets and that this practice was followed by other property owners in the subdivision for several years prior to 1938.

This argument is not sound because it is contrary to the unambiguous and express provisions contained in the deed, as follows: "If plots herein purchased are shown on the map as subdivided into four lots purchaser and assigns shall have the privilege of selling off any lot or lots that they so desire. It is provided, however, that not more than one dwelling shall be built on any one lot. It is further understood that all dwellings which shall be built on said lots and plots shall face streets according to map of this subdivision and that such plots as are not shown as subdivided on map shall remain intact in all future transfers, unless special permission is secured from the Council of the Town of South Highlands."

The original plan above referred to clearly shows that Plot 186 contains four lots—"A and B" which front on Ockley Drive (where the defendants previously built two houses which they sold) and Lots "C and D" which front on Atlantic Avenue; and that Lot "C" forms the corner of Albany and Atlantic Avenues.

The construction of the restrictive clauses as contended for by the defendants is, therefore, erroneous.

With reference to the defense of relinquishment or waiver of the restrictive clauses through acquiescence by failure of the landowners to object to violations thereof, the district court took into consideration all of the instances where there were buildings erected in the entire subdivision contrary to the building restrictions, and compared the total number of violations with the total number of lots in the entire subdivision (including the inside ones) and arrived at the conclusion that the violations were negligible in comparison with the number of lots in the subdivision, and, therefore, it could not be said that there was acquiescence or waiver of the building restrictions. The Court of Appeal differed with the district court in considering the question from this viewpoint and took the position that the comparison should be made of the violations of the restrictions in Unit No. 1 of Broadmoor Subdivision, where the plaintiffs have their residences, and particularly the violations of the restrictions in re-subdividing the plots that cornered on Atlantic Avenue and the side streets or avenues, in order to show that the restrictions have been more honored in their breach than their observance. The Court of Appeal pointed out that there was reason for the uniform disregard of the restrictions in not facing the buildings on Atlantic Avenue because it was an unimproved street which served only for drainage purposes and was adjacent to a cotton field and formed the southern boundary line of the City of Shreveport, thereby making it extremely unlikely that it would ever be improved as the City was without authority to make assessments against the landowners fronting on the opposite side of Atlantic Avenue, because their property was outside of the City limits.

As the issue before the court was whether or not these particular building restrictions had been relinquished or waived by acquiescence in so far as plots cornering on Atlantic Avenue were concerned, it appears to us that the Court of Appeal adopted the correct reasoning in considering the great proportionate number of violations of the building restrictions in Unit No. 1 of Broadmoor Subdivision and especially those with reference to the corner plots on Atlantic Avenue.

When Unit No. 1 of Broadmoor Subdivision was originally laid out there were certain building restrictions imposed which were in line with the semi-rural development thereof. Subsequent demand for building sites showed the property had become urban and almost from the beginning of the development of the subdivision in 1924 there were continuous re-subdivisions made of various plots changing the manner in which the buildings were to be faced. The developer himself, without the proper authorization from the City, as required by the restrictions, also indulged in this practice. While Atlantic Avenue was intended to be of equal importance with other streets and avenues, it was never actually opened as a street. Consequently, no houses were built fronting on it. The corner plots which are shown on the map as facing on Atlantic Avenue have been developed, with the exception of the plot owned by the defendants and the plot owned by the School Board. In every other case the plots cornering on Atlantic Avenue have been developed in a manner similar to that undertaken by the defendants. In other words, the houses built on these corner plots face the side avenues or streets and not Atlantic Avenue. The defendants' corner plot is the last one within the City limits on Atlantic Avenue and is the least attractive as a building site. The plaintiffs, who reside in the subdivision, have stood quietly by and permitted, without protest, the owners of every other plot which corners on Atlantic Avenue to develop and improve their plots in the same manner as the defendants are attempting to develop and improve their property.

As far as the plaintiff Edwards is concerned, it appears that just across the street from Plot 186 is Plot 159 and across from it is Plot 158. These are the nearest plots which border on that part of Albany Avenue which runs east and west and they have been developed in exactly the same way as the defendants have planned and attempted to develop Plot 186. In the same block with Plot 186 is Plot 173, which forms the corner of Akard Street and Atlantic Avenue. Across the street from Plot 173 is Plot 172 and across from it is Plot 145 and on the other side of Akard Street are Plots 144, 119 and 118, all of which are within one block of the property of the plaintiff Edwards. All of these plots have been developed in the manner in which the defendants contemplate developing Plot 186. When the defendants purchased their property in 1938 and the same year placed of record a re-subdivision of Plot 186, showing their intentions to develop and improve it in the same way as the other corner lots on Atlantic Avenue had been developed, the plaintiffs and especially Edwards made no objection, although he (Edwards) owned the contiguous or adjoining Plot 185. They also remained quiet and made no objection

when the defendants, after building two houses on Plot 186 facing Ockley Avenue, built a third house thereon facing Albany Avenue, the back of which third house faces the Edwards' residence and is nearer the left side of his house than the incomplete building on the corner, the erection of which was stopped through injunction proceedings. Therefore, as far as fronting houses on Albany Avenue instead of Atlantic Avenue, in violation of the building restrictions, is concerned, the plaintiffs and Edwards were confronted with similar violations all around them and in large proportionate numbers as was pointed out by the Court of Appeal.

In the case of Hill v. Wm. P. Ross, Inc., et al., 166 La. 581, 117 So. 725, 726, the purchaser, in violation of the building restrictions, attempted to erect a residence on a lot less than 60 feet front on Audubon Park Place. Suit was brought to enjoin the owner from erecting the building. The trial judge refused to issue an injunction and the plaintiff appealed. In annulling the judgment of the district court and in issuing the injunction, this Court said:

"The contention is made that plaintiff has waived said restrictions by not heretofore protesting against the erection of some five or six buildings on lots of less than 60 feet frontage on said boulevard, during the last five or six years; i. e., on lots having only 45 feet frontage.

"But the question of intention to waive such a restriction is one of fact, and 'a breach of a restriction by one purchaser must be such as to substantially defeat the object of the general scheme, in order to make consent to the breach, or acquiescence

in it, amount to release of the restrictions as against other purchasers.' Thompson on Real Property, vol. 4, p. 557, citing German v. Chapman, 7 Ch. Div. 271 (Eng.) and other authorities.

"And a breach of the restrictions in some five or six instances, out of some 300 lots involved in the general scheme, is not such a breach as to substantially defeat the object of the whole scheme, and hence an acquiescence therein is not such a general abandonment of the whole scheme as will amount to a release of the restrictions as to all future cases.

"In Parker v. Nightingale, 6 Allen (Mass.) 341, 83 Am.Dec. 632, an injunction actually issued in the case, and the final paragraph of the opinion (relied on by defendant) is merely a dictum that circumstances might exist which might warrant the refusal of an injunction; and this may be conceded, as in the following cases:

"In Ocean City Land Co. v. Weber, 83 N.J.Eq. 476, 91 A. 600, the evidence showed that the restrictions had been almost universally disregarded by all parties. In Scharer v. Pantler, 127 Mo.App. 433, 105 S.W. 668, the parties had all of them proceeded as if no restrictions had ever existed, and, 'one and all,' had either abandoned them or willfully violated them for many years past."

In the light of the foregoing authority, can it be said, under the facts of this case, that there was not such a substantial defeat of the objects of the scheme to have the residences and homes built on plots cornering on Atlantic Avenue so as to face that avenue—when all of the eight plots, with the exception of the School Board

plot and the one in question—have already been developed and residences built thereon fronting on side streets and avenues other than Atlantic Avenue, contrary to the building restrictions affecting Broadmoor Subdivision? We think not.

[4] The above-quoted statement of the law by this Court is in keeping with the general jurisprudence of the Supreme Courts of other states where it has been uniformly held that the right to enforce a restrictive covenant or real right running with the land may be lost by waiver or relinquishment through acquiescence, due to the failure of the landowners in the tract or subdivision to protest and object to general and continuous violations of building restriction clauses and that thereafter they have no right to subsequently enforce the restrictions by injunction process or through the courts. 18 C.J. "Deeds", §§ 467, 468, 26 C.J.S., Deeds, §§ 169, 170, and Meaney v. Stork et ux., 81 N.J.Eq. 210, 86 A. 398.

[5] The question of whether or not there has been a general waiver or relinquishment of the restrictive clauses by common consent or universal acquiescence due to multiple violations without protest or objection depends upon the facts of each case. In the instances where the violations have been so general or substantial without protest as to defeat the objects and purposes of the building restrictions, the courts have held that the restrictions are waived or relinquished and cannot subsequently be enforced. On the other hand, where there have been several violations but not in the immediate neighborhood or in close proximity or adjoining the property of the owners who make the complaint, they have not lost their right to obtain relief through the court enforcing the restrictive clauses. Caldwell v. Donaghey, 108 Ark. 60, 156 S.W. 839, 45 L.R.A.,N.S., 725, Ann.Cas. 1915B, 133; Note, 46 A.L.R. 373, 375; O'Gallagher v. Lockhart, 263 Ill. 489, 105 N.E. 295, 52 L.R.A.,N.S., 1044.

There are cases which hold that if there has not been a waiver or relinquishment of restrictive clauses due to acquiescence by the landowners in failing to protest against a great many violations thereof, the landowners whose property is adjacent to the property of a neighbor, who has attempted to violate the restrictive clauses, are entitled to relief even though they may not have protested or objected to the violations by other property owners in more remote parts of the neighborhood. Goulding v. Phinney, 234 Mass. 411, 125 N.E. 703; Rowland v. Miller, 139 N.Y. 93, 34 N.E. 765, 22 L.R.A. 182, 184; Brigham v. H. G. Mulock Company, 74 N.J.Eq. 287, 70 A. 185; Johnson v. Robertson, 156 Iowa 64, 135 N.W. 585, Ann.Cas.1915B, 137; Alderson v. Cutting, 163 Cal. 503, 126 P. 157, Ann.Cas.1914A, 1; Caldwell v. Donaghey, 108 Ark. 60, 156 S.W. 839, 45 L.R.A.,N.S., 725, Ann.Cas.1915B, 133; Brown v. Huber, 80 Ohio St. 183, 88 N.E. 322, 28 L.R.A., N.S., 705; Notes, 46 A.L.R. 372, 85 A.L.R. 936, and 54 A.L.R. 812.

[6] In the instant case, the Court of Appeal found as a fact, and the evidence supports its conclusion, that there was a general or universal waiver and relinquishment of the building restriction clauses in question by the acquiescence of the land-

owners in the neighborhood, and particularly when the violations were made next to and all around the plaintiff Edwards' property, because of the failure of the landowners and especially Edwards himself to protest and object thereto and, therefore, the plaintiffs have no right to complain and invoke the equity powers of the court to protect them against subsequent violations of these building restrictions because their right to do so had been previously lost. Our views are in accord with those of the Court of Appeal.

This opinion is confined strictly to the particular building restriction clauses in question in so far as they affect corner lots on Atlantic Avenue and the intersecting streets and in no wise affects any other building restrictions in connection with the development of Broadmoor Subdivision, Unit No. 1.

The defendants introduced evidence sufficient to satisfy the trial judge and the Court of Appeal that the building in question as modified and now sought to be erected would cost in excess of $4,000 and, therefore, that particular restriction was complied with. The original permit was for a building to cost $3,000, but later a permit for a $4,000 building was obtained before the trial of the case. Therefore, there was compliance with the restrictions in this respect.

■ The plaintiffs invoke the provisions of Act 326 of 1938, the pertinent part of which reads as follows:

"Section 1. Be it enacted by the Legislature of Louisiana, That all actions to enjoin, or to obtain damages for the Com-

mission, or continuance, of a violation of restrictions contained in the title to land, where otherwise such action presently exists under the laws of this State, must be brought within two years from the commission of said violation; provided, that where a violation of restrictions has actually existed for a period of two years prior to the passage of this Act, any action to enjoin the same, or to obtain damages therefor, if such action presently exists under the laws of this State, must be brought within four months from, and after, the effective date of this Act.

"Section 2. That in all cases where the prescription provided for by this Act shall have accrued, the particular parcel of land on which the restriction has been violated shall be forever free from the restriction which has been violated."

Counsel for the plaintiffs argue that as this suit was filed within two years from the time that Plot 186 was re-subdivided, without authority, and the buildings placed thereon in violation of the restrictions, there can be no question that plaintiffs have the right to enforce the restrictions as written. The whole tenor of the Act shows that it presupposes a right of action to enjoin the continuance of the violation of the restrictions to be in legal existence. Of course, if the restrictions have been waived or relinquished by universal acquiescence and common consent of the landowners there can be no right of action to enforce them, and, therefore, no right to seek an injunction or sue for damages for their violation. The question before the Court is not one of prescription as a bar to a right

of action where it otherwise presently exists under the laws of this state, but an issue of whether or not the right to enforce the restrictions has been lost through waiver and relinquishment by acquiescence on the part of the landowners. As the restrictive clauses were waived and relinquished by plaintiffs' acquiescence, they are no longer legally in existence and, hence, there is no right of action to prescribe.

The Court of Appeal awarded the defendants $500 as damages for attorneys' fees for dissolving the temporary restraining order issued by the lower court. The plaintiffs contend that the Court of Appeal erred in doing so for the following reasons: (1) That the law does not allow damages as attorneys' fees for the dissolution of a mere temporary restraining order issued at the discretion of the district judge in accordance with Act 29 of 1924; (2) that the restraining order was never dissolved but expired by limitation of time on the date stipulated therein; (3) that the defense upon which the judgment of the lower court on the merits was annulled by the Court of Appeal was a special one which could only be pleaded to the merits and could not be urged for the dissolution of the temporary restraining order and, therefore, the defendants were not entitled to the attorneys' fees awarded by the Court of Appeal; and (4) that the amount awarded is excessive.

The record shows that the plaintiffs petitioned for an injunction and also prayed for a temporary order which was issued ex parte under Act 29 of 1924. The defendants filed a motion to dissolve the restraining order on the ground that the allegations set forth in the plaintiffs' petition were untrue and that the plaintiffs were estopped to enforce the building restriction clauses.

By agreement of counsel, the rule to show cause why the temporary restraining order should not be dissolved was referred to the merits with reservation of defendants' right to claim damages for attorneys' fees. The trial on the merits began on Wednesday, March 6, 1940, at 2 o'clock p. m., and the order was issued extending the restraining order until Thursday, March 7, at 5 o'clock p. m. The order was never extended or renewed again and therefore it expired at the hour and on the date fixed therein. The trial on the merits continued to mid-afternoon on March 8, 1940, and the judgment of the district court was rendered in favor of the plaintiffs several weeks later.

From the answer of the defendants on the merits as well as from the evidence introduced in the case, it appears that the allegations of fact as set forth in the plaintiffs' petition were true and correct. The defendants denied that they were violating the restrictions, contending (1) that the plaintiffs had misconstrued the restrictive clauses; (2) that the restrictive clauses were waived, released or abandoned by acquiescence of the landowners in failing to protest and object to their continuous violation; and (3) that the plaintiffs were estopped because the defendants were led to believe, by the plaintiffs' prior conduct, they could face the house on Albany Avenue. These are special defenses to the

merits of the case and in no way show that the allegations of fact contained in the plaintiffs' petition upon which the temporary restraining order was issued were in any way false or untrue. In passing, we might say that the defendants have failed to maintain their first defense in all three courts.

In the cases of Coleman v. Currie, Sheriff, et al., 16 La.App. 403, 134 So. 733, Inter City Express Lines v. Guarisco, La. App., 165 So. 727, and Falgout v. Boudreaux et al., La.App., 188 So. 421, the court expressed grave doubt as to the right of the successful litigants in having a temporary restraining order dissolved to damages or attorneys' fees therefor.

■ It is well settled that a party litigant who succeeds in having a conservatory writ dissolved on defenses to the merits cannot recover attorneys' fees for the dissolution of the writ. Three Rivers Oil Co. v. Laurence, 153 La. 224, 95 So. 652; First National Bank v. Coreil, La. App., 149 So. 326; Witbeck v. Rea et al., 158 La. 1003, 105 So. 43; In re Morgan & Co., Inc., et al. v. DeRidder Light & Power Co., etc., 155 La. 915, 99 So. 696; Evasovich v. Cognevich, 159 La. 1035, 106 So. 556; Louisiana State Rice Milling Co., Inc. v. Potter, 179 La. 197, 153 So. 690; General Finance Company of Louisiana v. Veith, Jr., La.App., 177 So. 71.

■ There is no doubt that the special defense upon which the Court of Appeal set aside the judgment of the district court went only to the merits of the controversy and did not involve the illegal or improvident issuance of the temporary restraining order. The Court of Appeal's judgment did not dissolve the temporary restraining order but annulled the judgment on the merits, carrying with it the permanent injunction issued by the trial judge. The services of the attorneys employed by the defendants were therefore rendered on the trial of the case on its merits and not in connection with the dissolution of the temporary restraining order. Under these circumstances, the defendants were not entitled to recover damages as attorneys' fees for the dissolution of that order.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment of the Court of Appeal is amended by annulling the award in favor of the defendants of $500 for attorneys' fees and as thus amended, the judgment is affirmed; the defendants to pay the costs of this Court in connection with the proceedings on the writ, and the plaintiffs to pay the costs of the district court and the Court of Appeal.