JANVIER, Judge.
The plaintiff, Philip S. Finn, Jr., and one of the defendants, Mrs. Mildred T. Murphy, own adjoining residential properties in Mirabeau Gardens Subdivision, which is one of the more exclusive and restricted subdivisions in the City of New Orleans. Plaintiff acquired his property on January 8, 1951, and defendant acquired hers on April 18, 1952. In the titles of both parties there are restrictive covenants concerning the type of residence and other structure which may be erected in that area and setting forth the various distances from property lines at which buildings, fences, etc., may be located.
Finn, Jr., by petition for injunction, seeks to prevent defendant, Mrs. Murphy, from continuing with the erection of a fence alongside of her property nearer to the property line than the distances at which, according to plaintiff, a fence under the said restrictive covenants might be erected.
It may be well to mention that before the suit was filed, probably on the same day, the construction of the fence, with the exception of the gate, was completed.
It is alleged that Cyclone Fence Company, the other defendant, is constructing the fence and that company is made a nominal defendant. However, it was not cited and has filed no appearance of any kind.
After the filing of an exception of no cause of action which was overruled, Mrs. Murphy filed answer in which she “specifically” denied that the fence as erected “violates any phase of the restrictive covenants herein sued on.” In the alternative that it shotdd be held that the fence is vio-lative of any of the covenants, defendant averred
“that there have been general, widespread and repeated violations of the *359 fence restriction to such an extensive degree that the restrictive covenants in that respect are of no further force or effect.”
In the District Court there was judgment dismissing the suit and plaintiff has appealed suspensively and devolutively.
The record shows that there was held a pre-trial conference at which several agreements were arrived at. These are set forth in a stipiilation which is in the record and we shall refer to such portions of the stipulation as may seem necessary. In the first place, it is stipulated that the parties are the owners of the respective properties; that each purchased on the day alleged in the petition and that in both titles there appeared the respective covenants referred to in the petition.
Mirabeau Gardens Subdivision is divided into four sections, designated by the letters A, B, C and D. Each of these sections is divided into “squares.” We use the word squares not in its geometrical sense of an equilateral right angled figure, but merely as representing a unit of land containing various buildings lots and surrounded on all sides by streets or avenues. The properties of plaintiff and of defendant are in Section C. In this section there are nine squares, three of which are “reserved,” the remaining six being divided into residential lots. These six squares contain 217 lots. The particular square in which the properties of plaintiff and defendant are located is numbered Five. It contains 52 lots. Each of the parties owns two lots as is required by one of the title covenants.
The lots of defendant are numbered 26 and 27; each is 30 feet in width by 150 feet in depth. They both front on Fillmore Avenue, lot 26 forming the corner of Wilton Drive. The lots of plaintiff are numbered 24 and 25. Each is 30 feet in width by 125 feet in depth. They front on Wilton Drive, being immediately in the rear of defendant’s property.
The fence in question is along the Wilton Drive side of lot 26 of defendant’s property and is located parallel to the property line along Wilton Drive and is admittedly about two feet inside the- property line.
The entire controversy results from the location of that fence. Plaintiff contends that as a result of the restrictive covenants to .which we shall hereafter refer such a fence must be located at least 30 feet away from the property line. Defendant maintains that the fence is not in any way controlled by any of the covenants and may be located where it is now under construction, and, as we have said, defendant also contends that if the fence does violate any of the restrictive covenants nevertheless she can complete the erection of it, since the restrictive covenants have been violated in many instances in a similar way in that section of the subdivision.
It is conceded that restrictive covenants such as those found in these and the other titles to property in Mirabeau Gardens Subdivision are enforceable; that they are real rights which run with the land, and that any nearby owner may object to the violation of such covenants.
In Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725, 726, the Supreme Court said:
- “ * * * that such- restrictions, in contracts between individuals, are not unlawful in this state; that they -are not personal to the vendor but inure to the benefit- of all other grantees under a general plan of development, and are covenants running with the land; , that the remedy of the other grantees is by injunction to prevent a violation of the restrictions by any one of them.” ■
In Edwards v. Wiseman, 198 La. 382, 3 So.2d 661, 663, is found the following:
“The law is clear that building restriction clauses constitute real fights, not personal to the vendor, and inure to the benefit of all' other grantees under a general plan of development, and are real rights running with the land;- *360 and that the remedy of the other grantees to prevent a violation of the restrictions by another is by injunction. Queensborough Land Company v. Cazeaux et al., 136 La. 724, 67 So. 641, L.R.A.1916B, 1201, Ann.Cas.1916D, 1248; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725, and Ouachita Home Site & Realty Co. v. Collie, et al., 189 La. 521, 179 So. 841.”
See, also, Roche v. St. Romain, La.App., 51 So.2d 666.
However, it is not denied that the right to insist on the enforcement of such restrictions may be lost by waiver or acquiescence as a result of failure to protest or object to continuous violations in the same general area. In Edwards v. Wiseman, supra, the Supreme Court held:
“ * * * that the right to enforce ' a restrictive' covenant or real right running with the land may be lost by waiver or relinquishment through acquiescence, due to the failure. of the landowners in the tract or subdivision to protest and object to general and continuous violations of building restriction clauses and that thereafter they have no right to subsequently enforce the restrictions by injunction process or through the courts. 18 C.J. ‘Deeds,’ §§ 467,-468, 26 C.J.S., Deeds, §§ 169, 170, and Meaney v. Stork et ux., 81 N.J.Eq. 210, 86 A. 398.”
In a discussion of “Work of Louisiana Supreme Court” at page 201 of Volume IV, Louisiana Law Review, appears this statement:
“ * * * if a building restriction is repeatedly disregarded, it may be considered as abandoned by common consent. * * * ”.
In discussing the question of what constitutes a waiver the Supreme Court said:
“The question of whether or not there has been a general waiver or relinquishment of the restrictive clauses by common consent or universal acquiescence due to multiple violations without protest or objection depends upon the facts of each case. In the instances where the violations have been so general or substantial without protest as to defeat the objects and purposes of the building restrictions, the courts have held that the restrictions are waived or relinquished and cannot subsequently be enforced. On the other hand, where there have been several violations but not in the immediate neighborhood or in close proximity or adjoining the property of the owners who make the complaint, they have not lost their right to obtain relief through the court enforcing the restrictive clauses. Caldwell v. Donaghey, 108 Ark. 60, 156 S.W. 839, 45 L. R.A..N S. 725, Ann.Cas.1915B, 133; Note, 46 A.L.R. 373, 375: O’Gallagher v. Lockhart, 263 Ill. 489, 105 N.E. 295, 52 L.R.A.,N.S. 1044.”
Since the only testimony in the record is on the question of whether there has been an acquiescence in violations of the covenants in question, we deem it a¿-visable to first investigate this alternative defense, that even if the fence as located violated the terms of the restrictions, nevertheless the right of plaintiff to insist that defendant respect the covenants has been lost by failure to protest in this instance and by the fact that there have been repeated multiple violations in the particular area with which we are concerned.
The covenants themselves which bear on this particular situation are so confusing that it is very difficult to determine whether the particular fence should have been set back from the property line on Wilton Drive at all, or whether it might be erected twenty feet from the line or thirty feet away from it.
Defendant testified that she had carefully made a check in the immediate vicinity of the other properties in that area and had found eight other properties on which fences had been constructed as near to the property line as was hers. From a list which she had prepared she read the mu *361 nicipal numbers of these other eight properties on which fences as near as two feet from the property line had been constructed and said that “there are more than that.” She said later that “there are quite b. few” more and that “most of them were on the corner.” Hers is a corner property.
Counsel for plaintiff argue that the testimony of defendant should be disregarded because she admitted that she had made no measurements in an effort to obtain just how far each of these fences was from the property line. She did state, however, that in each case the fence was not more than two feet from the line and she indicated with her hands her estimate of two feet.
Since plaintiff contends that none of these fences was within twenty feet of any property line, it is evident that although defendant made no actual measurement, if she was telling the truth about having seen those other fences, she could not have been wrong to the extent of as much as eighteen feet.
We interpret her testimony as indicating that of the sixteen corner lots in that section of the subdivision, at least eight others, together with her own, making nine, had fences which, according to plaintiff violate the provisions of the restrictive covenants.
As against this testimony of defendant, plaintiff testified in a very general way that there were no such violations, and he placed on the stand a surveyor, for the purpose of showing that there was a violation by defendant and that there were no other violations in that immediate vicinity. However, both plaintiff and his surveyor indicated very plainly that they were not only completely ignorant concerning the covenants themselves which plaintiff is attempting to enforce, but that they were not at all certain that there were no other violations in that immediate area. When asked by the District Judge: “Did you find any fences that were within twenty feet of any line?” the surveyor, who was placed on the stand for that particular purpose, did not say definitely that he had not found any such felices, but merely said: “I don’t recall seeing any.”
Necessarily, we base our conclusion on this question of fact on the evidence in the record, and from the evidence we conclude that the violations of the restrictive covenants have been numerous in that area.
We note that the evidence seems to indicate that plaintiff made no protest during the construction of the fence. He does not deny that though he lives on the property adjoining that on which the fence was being constructed and that though the posts were placed in position ten days before he filed this suit, he said nothing to the defendant herself. He says that he attempted to talk to her on the telephone, but that no one answered when he called her up. Defendant says that he could not have called her by ’phone because her ’phone was unlisted and he could not have ascertained her telephone number. Plaintiff also says that, not being able to communicate with defendant, he telephoned the Cyclone Fence Company and advised that company that the fence was being constructed in violation of the covenants.
While no one from Cyclone Fence Company was placed on the stand, defendant, without objection, stated that she had “asked the Cyclone Company if they had any information about that and they said that they had no word or they would have gotten in touch with me if they had.”
Since it seems rather clear that, though- the covenants • are to some extent confusing, it would have been a violation of at least one of them - to have placed the fence nearer than twenty feet from the property line, we conclude that the District Judge based his decision on his belief that the other violations in the immediate vicinity had been so numerous as to justify the conclusion that there had been a general waiver and acquiescence in the violation. We also so conclude.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.