522 So.2d 163 (1988)
VILLAGE SQUARE SHOPPING CENTER ASSOCIATION
v.
Mrs. Frances NELSON.
No. CA-8682.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 1988.
Rehearing Denied April 13, 1988.
Writ Denied June 2, 1988.
*164 Frederick P. Heisler, New Orleans, for plaintiff/appellant.
Vincent T. LoCoco, Many, LoCoco, Kimble & Rives, New Orleans, for defendant-appellee.
Before SCHOTT, WARD and ARMSTRONG, JJ.
SCHOTT, Judge.
Plaintiff, Village Square Shopping Center Association, is a non-profit corporation composed of the owners of property in a commercial subdivision known as Village Square. Property in the subdivision was sold subject to building restrictions which included provisions for the Association to assess against each property owner his pro-rata share of the cost of maintaining common areas in the subdivision. In this suit the Association is attempting to collect assessments it levied between 1979 and 1986 against defendant, Mrs. Frances Nelson, and her deceased husband, David Nelson, as owners of property in the subdivision. From a judgment dismissing the suit the Association has appealed. The issue is whether the Association has forfeited or is somehow estopped from enforcing its right to collect the assessments because portions of the building restrictions regulating signs and the design of buildings have not been enforced.
David Nelson purchased property in Village Square in 1968 and constructed a building for use as a commercial photography studio. The property was subject to building restrictions which were printed in a brochure presumably given to Nelson when he became interested in the property. Among the restrictions are provisions for the assessment of charges against the property owners to cover the expense of maintaining common areas in the subdivision. Printed on the outside of the brochure are drawings by the project's architect which, according to defendant's characterization, "show that there was contemplated a shopping center with aesthetic harmony, uniform beauty and a look of first-class quality." Nelson was also presumably given by the developers a set of specific restrictions from the developers's "Architectural Control Committee" requiring all-brick store fronts and a specific type of brick, prohibiting picture windows, and limiting *165 the size of signs on stores and shops in the subdivision.
Mrs. Nelson testified that she and her husband were attracted to the subdivision because they thought signs and building designs would be controlled by the developer. However, shortly after they built their building, "gaudy", oversized signs and buildings with features in violation of the restrictions began to appear. They complained to the developer and resolved that they would not pay the assessments to plaintiff because it had failed to perform its obligation to enforce the restrictions.
The Association's president, Frederick Sigur, testified that he had been on the Architectural Control Committee when the subdivision was opened and David Nelson was the first property owner to build. Sigur stated that the sign and building restrictions were enforced when Nelson built, even to the extent that Nelson was not permitted to use a sign on his building because the sign slightly exceeded the maximum size permitted. However, three years after the subdivision was opened the Architectural Control Committee passed out of existence, and, from that point forward, the subject deviations from the restrictions began to appear. According to Sigur, enforcement of the restrictions then became the business of the Association, but the members of the Association, who were the property owners in the subdivision, declined to take action. Sigur thought that the Association members-property owners considered the twelve square foot limitation on sign size to be impractical for businesses which were located 160 feet off the highway.
The trial judge accepted defendant's theory that she and her husband were motivated to buy in the subdivision because of assurances by the developer that its aesthetic appearance would be maintained and enforced. He concluded that because the Association failed in its obligation to defendant, "equity dictates that it would be unjust to allow the Plaintiff to enforce the Defendant's obligation of paying these assessment fees."
Building restrictions are incorporeal immovables and real rights established by juridical act executed by the owner of an immovable or by all the owners of the affected immovables. LSA-C.C. arts. 776, 777. They are subject to interpretation and enforcement as are contracts. See Revision Comments to C.C. arts. 776, 779, 783. Thus, for purposes of interpretation, the restrictions in this case may be likened to a contract amongst the property owners and the developer. A court may resort to equity in the interpretation of a contract only where its provisions are doubtful or where there is no provision for a particular situation. LSA C.C. arts. 2053 and 2054. In order to determine whether or not the trial judge properly resorted to equity in deciding this case we must first consider the following pertinent provisions of the restrictions:

RESTRICTIONS ON "VILLAGE SQUARE"

St. Bernarnd Parish, Louisiana PART ACOMMERCIAL AREA COVENANTS
3. ARCHITECTURAL CONTROL. No building, addition, sign, wall or fence shall be erected, placed, or altered on any building lot in the subdivision until the construction plans and specifications and a plan showing the location of the structure or otherwise proposed improvements, have been approved in writing by the Architectural Control Committee as to quality of workmanship and materials, harmony of external design with existing structures, and as to location with respect to topography and finish grade elevation.
7. SIGNS: No sign shall be constructed or erected without prior approval of the Architectural Control Committee.
10. SHOPPING CENTER ASSOCIATION: Every person, firm or corporation that is a record title owner of any lot shall ipso facto be a member of the Village Square Shopping Center Association, hereinafter referred to as the Association, which said association is a non profit corporation created by act before Allen J. Tillery, Notary Public dated *166 April 19, 1968 and recorded in the office of the Clerk of Court for the Parish of St. Bernard, in MOB 94, folio 20, Entry No. 87450, and the said Association is charged with the obligation of maintaining and cleaning of the parking area, sidewalk area, and the rear service area, and the lighting of same. For the purpose of providing funds for the aforesaid purposes of the Association, each lot owner shall be liable for the pro-rata share thereof, based on the number of lots he owns in relation to the total number of lots. The assessment and collection of the pro-rata share of the aforesaid assessments shall be in accordance with the charter and by-laws of the said association.

PART BARCHITECTURAL CONTROL COMMITTEE
3. Term: The initial term of the said committee shall be for a period of three (3) years or for such longer period as the said committee in its discretion deems necessary. However, the Committee shall have the right at any time after the initial aforesaid three year term, dissolve, in which event the owners of the lots covered by the within restrictions shall nonetheless be bound by these restrictions but without any architectural control as mentioned in Paragraph 3, Part A. above.

PART CGENERAL PROVISIONS
2. ENFORCEMENT: Enforcement shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any covenant either to restrain violation or to recover damages; and the aforesaid Village Square Shopping Center Association shall also have the right to bring proceedings to enforce the terms and provisions of these restrictive covenants.
The brochure containing the property restrictions also contains the Articles of Incorporation of Village Square Shopping Center Association. These contain the following pertinent provisions:

ARTICLES OF INCORPORATION OF VILLAGE SQUARE SHOPPING CENTER ASSOCIATION

ARTICLE II
.... the corporation shall have the power to:
(A) Perform all of those services and functions necessary in order to enhance the business climate of the merchants within the shopping center, including sales promotional campaigns: to provide for adequate parking and traffic flow control; landscaping and lighting of the properties:
(B) Provide for proper removal of trash, refuse and debris and supplement municipal services:
(C) Fix assessments (or charges) to be levied against the properties.
(D) Enforce any and all covenants, restrictions and agreements applicable to the properties.
(E) Insofar as permitted by law, to do any other thing that, in the opinion of the Board of Directors, will promote the common benefits of the owners, shopkeepers, and/or lessees of the properties, together with their customers, invitees licensees, etc.

ARTICLE III
MEMBERSHIP: This corporation is and shall be organized on a membership basis and no shares or certificates of stock shall be issued. Every person or entity who is a record title owner of any lot situated in the above mentioned Parcel 2 of Square B and Parcel 3 of Square A Village Square shall be members of this corporation.

ARTICLE VI
ASSESSMENTS: the members and the lot upon which said member's membership is based shall be subject to and liable for fees and assessments which shall be assessed by the Board of Directors for the purpose of operating, maintaining and improving the common areas of the property and otherwise *167 carrying out the purpose of this corporation. Beginning September 1, 1968, the annual assessment against each lot shall be $100.00 payable in advance, and which said assessment may not be changed, altered or modified through August 31, 1969. From and after August 31, 1969 the annual assessment may be increased or decreased only by a majority in number of votes of members of the corporation entitled to vote at that time. In no event may the annual assessment be increased in an amount exceeding twenty (20%) percent of the prior year's assessment.
These provisions clearly provide that 1) the Architectural Control Committee may be dissolved within three years after its establishment in May 1968, (B)(3); 2) in that event the owners shall remain bound by the restrictions but without the aid of the committee (B)(3); and 3) enforcement shall be by legal proceedings and the Association "shall also have the right" to enforce the restrictions. This recognizes that property owners like defendant may sue to enforce the restrictions and it gives this right also to the Association. But it does not purport to require the Association to enforce the restrictions. This contract was the law among the parties. When Nelson found that the restrictions were being violated he had the option of trying to get his Association to enforce the restrictions, or to bring his own suit to enforce them. See C.C. art. 2046 and comments thereto.
The contract is equally clear with respect to the assessments the Association is claiming. The Nelsons agreed to be liable for these assessments which would cover their pro-rata share of the cost of maintaining and cleaning of the parking area, sidewalk area, and the rear service area and the cost of lighting. (Restrictions, (A)(10)). The Nelsons likewise agreed to be members of the Association and to be obliged by Article VI of its charter providing for the assessment procedure. Because these provisions are clear and specifically provide for the dispute at hand the trial court was not authorized to resort to equity in reaching a judgment. However, defendant contends that the law supports her position anyway. She refers to C.C. art. 782 which provides as follows:
Building restrictions terminate by abandonment of the whole plan or by a general abandonment of a particular restriction. When the entire plan is abandoned the affected area is freed of all restrictions; when a particular restriction is abandoned, the affected area is freed of that restriction only.
She argues that the violations of the restrictions pertaining to signs and the facades and front windows of buildings in the subdivision constituted a subversion of, or a significant change in, the original scheme of development envisioned by the subdivider and resulted in a substantial change in the intended nature of the subdivision. As a result, citing Robinson v. Donnell, 374 So.2d 691 (La.App. 1st Cir.1979), writ denied, 375 So.2d 958, and Finn v. Murphy, 72 So.2d 358 (La.App.1954), writ denied, she contends that the whole plan of the restrictions has been abandoned.
These cases are distinguishable. In Finn the plaintiff's attempt to enforce fence restrictions against his neighbor was rejected because the fence restrictions themselves had been universally ignored and, thus, abandoned. In Robinson the restrictions provided for a residential subdivision but an eight acre lake in the tract was leased for a commercial boat operation. After eight years of continuous commercial use of the lake for testing and demonstrating boats and boat equipment the lessee placed a mobile home trailer on a lot near the lake in violation of one of the restrictions which prohibited the use of a trailer in the subdivision. The court noted that use of the lake was restricted to commercial purposes and could not be used by the residents of the subdivision for recreational purposes; and that it was not likely that lots in the subdivision could be developed into residential sites because of the unavailability of municipal utilities.
In the present case there are many restrictions in addition to the ones quoted above. Defendant established violations of those pertaining only to signs and the facades *168 and front window of buildings. Unlike the Robinson case, these are violations of particular restrictions, but this does not support the conclusion that there has been a significant or substantial change in the scheme of development or intended nature of the subdivision. In East Parker Properties, Inc. v. Pelican Realty Co., 335 So. 2d 466 (La.App. 1st Cir.1976) writ denied, 338 So.2d 699, the court took the approach that in deciding whether or not restrictions have been abandoned the first question is what the subdivider intended the plan of the subdivision to be; and then whether the violations show that the intended plan was disrupted. The intended plan of Village Square was for a successful shopping center. The changes about which defendant complains have not disrupted the intended plan but have probably enhanced it by making it more commercially viable for its owners. We conclude that only the pertinent particular restrictions may have been abandoned and not the whole plan. Therefore, the Association has not lost its right to collect the assessments under C.C. art. 782 as defendant argues.
For the sake of discussion, we have pretermitted the question of whether the provision in the restrictions for the assessments is a building restriction at all under our law. Under (A)(10) of the restrictions each property owner becomes a member of the Association and each lot owner is liable for his pro rata share of the expenses involved. But the mechanics for the assessment and collection of the assessments are in the Association's charter. This provides that when a member fails to pay, the Association's Board of Directors "may, in addition to the personal action against such members, cause to be recorded.... a lien" against the property of such a member. When David Nelson bought his property he agreed to become a member of the Association and to pay the assessments. Aside from defendant's possible liability under the theory that law of building restrictions applies, she has a personal contractual liability to pay the assessments in exchange for the Association's duty to maintain the common areas in the subdivision.
There is no suggestion in the record that the Association has not performed its obligations relating to the assessments. Consequently, the record does not support defendant's argument that the Association is precluded from collecting by virtue of C.C. art. 1983's mandate that "Contracts must be performed in good faith."
This discussion effectively disposes of defendant's final argument that much of the Association's claim has prescribed by virtue of C.C. art. 3494's three year prescription against a claim on an open account. The Association's claim is a personal action whose prescription is ten years. C.C. art. 3499.
Accordingly, the judgment appealed from is reversed and set aside. There is judgment in favor of plaintiff, Village Square Shopping Center Association, and against defendant, Mrs. Frances Nelson, in the sum of $1,640.00 with legal interest from date of judicial demand until paid and for all costs of these proceedings.
REVERSED AND RENDERED.
WARD, J., concurs.
WARD, Judge, concurring.
I concur in the result arrived at by the majority. I believe it necessary, however, to state my views relative to some dicta and certain possible conclusions which may be drawn from the majority opinion and with which I would disagree.
The majority's holding that the Nelsons were contractually bound to pay the assessments in return for common area maintenance is correct. I also agree with the majority that Mrs. Nelson is not relieved of this contractual responsibility merely because the Association has the right to enforce the building restrictions established by the Architectural Control Committee.
I further subscribe to the holding that, upon finding that the restrictions were violated, the Nelsons had remedies provided for in the contract between the parties. Refusal to pay maintenance assessments is not a contractual remedy, especially when *169 the assessments were not alleged to have been misused or used for something other than common area maintenance.
Beyond these findings and holdings, I believe the majority's discussion is unnecessary. The review of the law governing building restrictions is dictum because the majority ultimately declined to determine whether the assessments could properly be considered a "restriction."
Moreover, in its dictum the majority, discussing the intended plan of the shopping center, reaches conclusions which I believe are incorrect. The intended plan may have been, in part, to insure the commercial success of the shopping center, but it was also to promote a certain aesthetic quality in the shopping center. If, as the majority indicates, the only standard upon which to judge these building restrictions is commercial viability, then the restrictions are meaningless. I place more value on building restrictions and believe the evidence showed clear and significant violations. Because these restrictions were directly linked to the aesthetic value of the shopping center, the aesthetic value of the shopping center had been significantly impaired. Thus, the commercial viability of the shopping center as it relates to the developer's "intended plan" is immaterial because, in my view, Mrs. Nelson proved that the building restriction violations were commercially disastrous, at least to her husband's business.
In conclusion, the Nelsons were entitled to enforce the building restrictions. They chose, however, an unauthorized remedy, one which effectively breached a contractual obligation. I therefore agree with the reversal of the Trial Court judgment.