51 So.2d 666 (1951)
ROCHE et al.
v.
ST. ROMAIN et al.
No. 19638.
Court of Appeal of Louisiana, Orleans.
April 9, 1951.
*667 Cobb & Wright and John S. Donnaud, New Orleans, for plaintiffs-appellants.
John E. Fleury, Gretna, for defendants-appellees.
JANVIER, Judge.
The plaintiffs, Edward J. Roche, Harry J. Collins and Edward W. Wells, at the time of the filing of this petition for injunction, were all home owners in Orleans Parkway Subdivision of the Parish of Jefferson.
When the matter was argued before us it was stated by counsel for all parties that Edward W. Wells had sold his property and no longer resided there.
The plaintiffs seek to enjoin the defendants, Mr. and Mrs. Francis Russel Laughlin, who also own a residence in the same subdivision very close to the residence of the three plaintiffs, from operating a commercial dog kennel on their property.
It is alleged that the injunction should issue for either or both of two reasons: First, that the conduct of such a business as a commercial dog kennel is violative of certain restrictions which are contained in the titles of defendants and of plaintiffs; and also because the operation of such a kennel in "* * * a residential area, is degrading and devaluating to the property in said subdivision which surrounds defendants' property on two sides," and that the "noises and noxious odors that emanate from these kennels" constitute a nuisance and "a serious detriment to the health and welfare of the children as well as your petitioners and other persons residing in the subdivision."
Petitioners prayed for and obtained a temporary restraining order "restraining, enjoining and prohibiting said defendants * * *, their agents, servants and employees, from further operating and maintaining dog kennels and making any additions to the dog kennels on their premises * * *."
When the matter came up for hearing on the rule nisi for a preliminary injunction, counsel agreed to submit the matter on the merits.
The defendants answered, denying that the operation of the kennel was in violation of the title restrictions referred to and denying also that the operation of the kennels constituted a nuisance, and they averred that the kennels had been in operation for more than two years when the petition was filed and that, therefore, any right which the plaintiffs or any one else may have had as a result of the title restrictions had been lost by prescription because of the provisions of Act No. 326 of 1938, LSA-RS 9:5622. During the progress of the trial, counsel for the defendants tendered evidence for the purpose of showing that within the subdivision there were operated businesses of various kinds, and he argued that as a result there had been a general waiver of the title restrictions in question and that consequently plaintiffs no longer had the right to insist upon the enforcement of these restrictions.
After a trial on the merits there was judgment recalling the restraining order and dismissing plaintiffs' suit for a permanent injunction.
The matter is now before us on devolutive appeal by plaintiffs.
The record shows that the defendants own the property No. 625 Second Street, and in the rear of this property they maintain the kennel to which plaintiffs object. The property which was owned by Wells, one of the plaintiffs, bears the No. 621 Second Street and is immediately alongside the property of defendants. The residence of Harry J. Collins, another plaintiff, bears the No. 630 Third Street. A portion of the rear line of Collins' property forms a portion of the rear line of the property of defendants. The property of Roche, the other plaintiff, is No. 624 Third Street and a portion of the rear line of this property also forms a portion of the rear line of the property of defendants.
*668 The defendants bought their property in July, 1946. It is conceded that there was in their title and in the other titles with which we are concerned a restriction reading as follows: "The property herein sold shall never be used for a barroom or other noxious business, factories, dairies or business of any character or anything that would tend to depreciate the value of neighboring real estate; that the property shall never be leased or sold to persons of African descent, and that should a residence be constructed it shall cost no less than $2000.00, at the prevailing market prices of material."
Wells did not buy his property until November, 1948; Roche, the second of the plaintiffs, bought his property in November, 1946, and Collins, the third of the plaintiffs, bought his property in and has occupied it since 1940.
The plea of prescription of two years is based upon the provisions of Act No. 326 of 1938, the pertinent portion of which reads as follows: "Be it enacted by the Legislature of Louisiana, That all actions to enjoin, or to obtain damages for the Commission, or continuance, of a violation of restrictions contained in the title to land, where otherwise such action presently exists under the laws of this State, must be brought within two years from the commission of said violation; * * *."
The defendants offered much evidence in support of their allegation that they had been operating the kennel "since about the middle or latter part of 1947", and they maintain that since the suit was not filed until May 12, 1950, any rights, which may once have existed as a result of the title restrictions, have now been lost by prescription.
Plaintiffs countered with considerable evidence tending to show that though the defendants may have taken care of a few dogs as early as during the latter part of 1947, they did not complete the construction of the kennel, which they have since operated, until much later, and it is argued on behalf of plaintiffs that the period of prescription did not commence to run until the kennel was completed and operation thereof in its present form commenced.
The record makes it very clear that, although the defendants may have operated a kennel in which they took care of a few dogs in the year 1947, they did not complete their construction work until much later and that during the early days of their operation it was not possible for the neighbors to see and know what was going on or to determine if a kennel was being operated, except for the fact that, according to defendants, from the very beginning of their operations, they maintained a sign on their property advertising the operation of a kennel. Plaintiffs deny that the sign referred to kennels and assert that such sign as there was merely advertised a dog "at stud."
Whatever the sign advertised, the record conclusively shows that from the beginning such kennel as was operated was run on a very small basis and the building in which a few dogs were kept was so located as not to be seen from the outside of the property. In fact, Mr. Laughlin himself said that in the beginning Collins, one of the plaintiffs, could not "see just what I had over there." A little later he was asked if anybody could see what was in his yard, and he said: "No, not unless they came in the yard."
The fact that the kennels, as they are now operated, did not really come into existence until very much later is evidenced by the testimony of many witnesses of which the statement of Mr. Herbert Behrend, a witness offered by defendants, is typical. He said that though he knew that the defendants were building the kennels about November or December, 1947, he went over there about a year later and "it looked like it was completed." He added, however, that even at that time, which would have been near the end of 1948, Laughlin "did not have what he has there todaythis big run, or that kind of stuff."
Mr. Laughlin himself said that though he was taking care of some dogs in the Fall of 1947, "I started in June, July and August, Nineteen forty-eight (1948) to build the dog kennels."
There is thus presented by the plea of prescription a very interesting question: When did the period of prescription begin *669 to run? If a title restriction prohibits the doing of a certain thing and a law provides a period of prescription within which a neighbor must object or lose the right to object and the activity is commenced in a modest unnoticeable way, and gradually assumes objectionable proportions, does the period of prescription commence to run from the first day the modest operation is commenced, or does it commence to run only when the operation assumes objectionable proportions?
There is also presented the question of whether the doctrine "contra non valentem agere non currit praescriptio" is applicable to such facts as are shown.
If the objectionable operation which is violative of the title restrictions is so screened, intentionally or accidentally, that the neighbors, who would have the right to object, are unaware of it, does the doctrine "contra non valentem" delay the accrual of prescription?
Another of the defenses relied upon is the contention that there have been operated in that same neighborhood businesses of other kinds and that since these businesses have not been objected to, there has resulted a general waiver of the right to rely upon the title restrictions and that, as a result, the plaintiffs can no longer insist that because of the title restrictions the defendants cannot operate this business. This particular contention, or the facts on which it is based, is not set forth in the defendants' answer, and counsel for plaintiffs insist that it cannot be relied upon since it was not pleaded, although it constituted a special defense. When counsel for plaintiffs objected to evidence tending to show that there were in operation other businesses in that neighborhood, the judge a quo ruled that he would limit such evidence to businesses in the immediate vicinity, and there was then introduced evidence tending to show that there was in operation a business in which the operator manufactured ventilating fans.
There was presented to the Supreme Court in Edwards v. Wiseman, 198 La. 382, 3 So.2d 661, 665, the question of whether or not such building restrictions are waived or relinquished when a general violation thereof is permitted.
The Court held that the right to enforce such restrictions might be lost by failure "to protest and object to general and continuous violations of building restriction clauses * * *". And the Court further said: "The question of whether or not there has been a general waiver or relinquishment of the restrictive clauses by common consent or universal acquiescence due to multiple violations without protest or objection depends upon the facts of each case. * * *"
Since there is another ground on which the injunction is sought, that is, that regardless of the title restrictions, the operation of dog kennels in such a neighborhood is a nuisance, and since, on that ground, we have reached the conclusion that the injunction should issue, it is not necessary that we reach a conclusion on the question of whether the title restrictions have been violated; whether there has been a waiver of the right to protest, or whether the right has been lost as the result of the accrual of prescription.
We are convinced that the operation of such a dog kennel is an insupportable nuisance in such a residential neighborhood and that it detracts considerably from the peaceable enjoyment of life by persons living in homes nearby and that it also depreciates the value of the property which adjoins or is close to that on which such a kennel is operated.
It seems obvious that the neighbors of the Laughlins divided themselves into two groups, in one of which are those who took the position that the kennels are not objectionable and that from them there emanate no objectionable noises or noxious odors, and in the other group are those, such as the plaintiffs, who hold the opposite view. Those who favor the defendants considerably outnumber those produced by plaintiffs. In practically all of the affidavits offered on behalf of defendants, there is the statement that from the kennels there have been no objectionable or offensive odors *670 and "that there has been no unnecessary barking of dogs."
We are especially interested in the word "unnecessary" and we wonder just what is meant by it. We wonder why those who own and occupy residences in a residential area should be required to submit to even the "necessary" barking of large numbers of dogs which are boarded commercially.
We find ourselves in agreement with the views expressed by the Court of Appeal for the Second Circuit in Robertson v. Shipp, La.App., 50 So.2d 699, 704, "The business of boarding, raising and training dogs in large numbers, in a rural community, such as that wherein the parties hereto live, is not per se a nuisance. It would, of course, be so classified if operated in a city, town or village. * * *"
That this Court has for many years been of the opinion that the "howls and barks" of dogs at night constitute a nuisance to which neighbors should not be required to submit is evident from a reading of our opinion rendered in 1904 in Marks v. Luce, 1 Orleans App. 107.
Another case in which it was held that the maintenance of dog kennels in connection with a small animal hospital constitutes a nuisance, even in a small town, is Tolbot v. Stiles, La.App., 189 So. 469.
In the case at bar it was conceded by defendants that at times they had maintained as many as seventeen dogs in their establishment, and it was not denied that the space available could accommodate as many as forty dogs.
It is true that the defendants maintained vehemently that all possible precautions are taken to eliminate noises and odors, and, in fact, Mrs. Laughlin went so far as to state that Mr. Laughlin scrubbed the kennels personally on his hands and knees with soap, and she made the statement, possibly inadvertently, that he did this twice each day.
There seems to be no denial of the evidence to the effect that the filth and waste matter, outside of that which is picked up and put into garbage cans, is merely washed out on to the lawn.
All in all we cannot avoid the conclusion that the maintenance of these dog kennels is an insupportable nuisance and that plaintiffs are entitled to the injunction prayed for.
Accordingly, it is ordered, adjudged and decreed that insofar as the judgment appealed from dismisses plaintiffs' suit for an injunction, it is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the defendants, Mrs. Mary A. St. Romain, wife of and Francis Russel Laughlin, be and they are restrained, enjoined and prohibited from the further operation of dog kennels and making any additions to the dog kennels on their premises No. 625 Second Street, Orleans Parkway Subdivision, Jefferson Parish, Louisiana; defendants to pay all costs.
Reversed.