73 So.2d 330 (1954)
HARRIS et al.
v.
PIERCE et al.
No. 20335.
Court of Appeal of Louisiana, Orleans.
June 21, 1954.
*332 Philip S. Finn, Jr., New Orleans, and C. Cyril Broussard, Sulphur, for plaintiffs and appellants.
Harold A. Buchler, New Orleans, and Willis C. McDonald, Metairie, for defendants and appellees.
McBRIDE and REGAN, JJ., and REDMANN, Judge ad hoc.
McBRIDE, Judge.
This appeal is taken by plaintiffs from the refusal of the trial judge to issue a preliminary injunction prohibiting the defendants from violating certain restrictive covenants affecting property situated in Oaklawn Subdivision (Metairie), Jefferson Parish. The appeal was taken to the Supreme Court of Louisiana, and that Court transferred the matter to us. 224 La. 585, 70 So.2d 134. See No. 40,045 of its docket. Both plaintiffs and the defendants are owners of property in the subdivision; plaintiffs complained that Clynoid G. Pierce and Mrs. Vivian H. Pierce, named as defendants, were in the process of erecting a structure on their property which they intend to use in carrying on a retail grocery business, all in violation of the restrictive covenants appertaining to property in Oaklawn Subdivision. They seek to enjoin defendants from erecting the building and from employing it for the said purpose; plaintiffs also pray for a mandatory injunction compelling the removal of the building. A temporary restraining order was issued and defendants were directed to show cause why a preliminary writ of injunction should not issue against them. After a trial of the rule nisi, the lower court refused the preliminary injunction and recalled the rule; the temporary restraining order was dissolved.
Defendants acquired part of Lot 18, Division 4, forming the corner of Oaklawn Drive and Canal Street, on May 3, 1946. Mrs. Harris acquired portions of Lots 17 and 18, Division 4, on June 20, 1946, her property immediately adjoining that of defendants on the Metairie Road side. The other plaintiff, Prosser, acquired portions of Lots 27 and 28, Division 4, on June 26, 1950, and according to our calculation Prosser's property is located some 374 feet from the part of Lot 18 which the defendants own.
It is not disputed that the pertinent restrictive covenants affecting the property of the respective litigants referred to and relied upon by plaintiffs are:
"2. No buildings shall be erected upon said property nearer than 25 feet from the front property line, or 10 feet from either side street line. No building except a detached garage or other out-building located 75 feet or more from the front lot line shall be located nearer than 5 feet to any side lot line, or in case of a corner lot not closer than 10 feet to the side street line. No residence or attached appurtenance shall be erected on any lot farther than 35 feet from the front lot line.
"5. All lots in the tract shall be known and described as residential lots. No structures shall be erected, altered, placed or permitted to remain on any residential building plot other than one detached single family dwelling, not to exceed two stories in height and a private garage for not more than two cars and other appropriate buildings.
"6. No noxious or offensive trade or activity shall be carried on or upon any lot, nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."
Nor is it disputed that at the time of the institution of this suit the defendants were in the process of constructing a hollow-concrete-block building on their property *333 with the intention of putting the building to use as a retail grocery, all as alleged by plaintiffs. Upon the issuance of the restraining order, defendants desisted in their activities and work on the building was stopped. However, upon the dissolution of the restraining order, defendants went ahead with the work and the building was ultimately completed and is now being used in the commercial venture.
Defendants in answer admitted the erection of the building and their intention to use it when finished in commercial pursuits, but they contend: (1) The structure is merely the replacement of a former building which had been destroyed by flood waters some years previously; (2) that by the failure of plaintiffs and other owners to object to other violations of the restrictive covenants in the subdivision, there has resulted a waiver of the right to insist on the enforcement of the title restrictions; (3) that a retail grocery store is not a noxious or offensive trade or activity and such business is permitted by the restrictions; and (4) defendants are protected by the two-year prescription provided for by Act 326 of 1938 (now LSA-R.S. 9:5622).
The building under construction when the suit was filed was not, as defendants contend, the mere "replacement of a former structure which was destroyed." The truth of the matter is that there had previously existed on defendants' land a wooden chicken house which was damaged or destroyed in the flood of 1947, this building having had the dimensions 34 feet in length, 10 feet in width, and about 6 feet in height. The end of the chicken house nearest Canal Street was about 15 feet removed from the side property line. The present building is differently located and is of somewhat greater proportions, the record showing it to be approximately 25 feet in length, 20 feet in width, by 14 feet in height. It is significant to mention that the north end of this building is only a slight distance from the side line of the lot. Pierce, one of the defendants, admitted that the northeast corner of the structure is between 1 and 2 feet from the side line and that this "might be a violation of one of the covenants."
There is no question that where there are multiple violations of such restrictive clauses and protests are not made, there may result a waiver of the right to enforce those clauses, but it is well settled that a waiver does not result unless there have been general and multiple violations without protest. Edwards v. Wiseman, 198 La. 382, 3 So.2d 661; Rhodes v. Foti, La.App., 54 So.2d 534; Roche v. St. Romain, La.App., 51 So.2d 666.
From a reading of the agreed statement of facts we cannot ascertain whether there have been general or multiple violations in the particular subdivision in which the properties of plaintiffs and defendants are located. Some violations were mentioned by defense witnesses, but it is not shown where the property upon which such violations supposedly took place is located; nor do the names of the offending property owners appear. One witness testified that a "number" of garages on one side of Oaklawn Drive had been built during the late war by order of W. P. B. within a "couple" of feet of the side lines instead of 5 feet as required by the covenants. Pierce said he knew of three other persons who were carrying on some form of business in Oaklawn Subdivision on their premises; that one was building boats, another doing sheet metal work, and the other, named Messina, a fruit dealer, sold produce from a truck which he parked at his residence at night. Jones, another witness, was aware of "four" violations. An interesting thing about this witness is that "he would not care to have a grocery business set up on the premises next to his home, but saw no objection to defendants establishing one next to" Mrs. Harris.
Oaklawn Subdivision, situated between Metairie Road and Canal Street, is traversed by one main artery, namely Oaklawn Drive. Both plaintiffs have residences on their lots. We are told that the subdivision is completely developed with about 130 residences. We are unable to say that the few vague instances alluded to by the witnesses *334 are such violations as would work to substantially defeat the object of the whole scheme and amount to a release of the restrictions as to future cases. Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725.
Defendants devote a major portion of their argument to the proposition that a retail grocery is not a nuisance per se and is not such a "noxious or offensive trade or activity" as is contemplated by Covenant No. 6. They argue that the import of this covenant would permit any trade or activity which cannot be placed in the category of being noxious or offensive. We find it difficult to follow counsel's line of reasoning. They seem to overlook entirely the provisions of Covenant No. 5 which dedicate the subdivision to residential purposes only and prohibit on any lot a structure other than a detached single family dwelling. From the context of Covenant No. 6, it is manifest that the only effect of its provisions is to prohibit trades or activities on lots which may be or become an annoyance or nuisance to the neighborhood.
Since the suit was instituted while the defendants were in the course of erecting the commercial building complained of by plaintiffs, it is perfectly obvious that the provisions of LSA-R.S. 9:5622 have no application as plaintiff's right to object was timely exercised
It has been held that in contracts between individuals, such restrictions as prevail in Oaklawn Subdivision are not unlawful in this State; neither are they personal to the vendor but enure to the benefit of all grantees under the general plan of development and are covenants running with the land; the remedy of the other grantees is by injunction to prevent a violation of the restrictions by any one of them. Queensborough Land Co. v. Cazeaux, 136 La. 724, 67 So. 641, L.R.A.1916B, 1201; Hill v. Wm. P. Ross, Inc., supra.
Since plaintiffs have made out a prima facie case showing that the defendants erected their building in violation of the prohibitive clauses of Covenants Nos. 2 and 5, and since the record does not show definitely that there has been a waiver of the right to object, our conclusion is that the trial judge erred in the refusal of the preliminary prohibitory injunction.
A preliminary injunction is designed to preserve rights pending a trial of the issues of the case on the merits. Brooks v. Chinn, La.App., 52 So.2d 583; Drew v. Town of Zwolle, 185 La. 867, 171 So. 59; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Palama v. Livaudais, 179 La. 201, 153 So. 691.
This brings up the question whether plaintiffs are entitled to a preliminary injunction mandating the removal of the building on defendants' property.
The general rule is that an injunction will issue only in its prohibitory form, but when a defendant obstructs plaintiff in the enjoyment of a real right, the latter may be entitled to a prohibitory injunction restraining the disturbance and also to a mandatory injunction for the removal of the obstruction or to undo what has been illegally done. Broussard v. Cormier, 154 La. 877, 98 So. 403. However, a mandatory injunction should not issue save after a hearing on the merits of the case or in aid of the enforcement of a prohibitory injunction which has already been allowed. Board of Com'rs of Petite Anse Drainage Dist. v. Iberia & Vermilion R. Co., 117 La. 940, 42 So. 433. We believe that the question whether plaintiffs are entitled to the mandatory injunction should await determination until after the case has been set down for trial and heard on the merits.
Accordingly, the order of the trial judge refusing the issuance of a preliminary injunction and recalling the rule nisi is reversed, and it is now ordered that this case be remanded to the court below with instructions to the trial judge (1) to issue a preliminary prohibitory injunction against the defendants as prayed for, and (2) that the cause be set down for trial on its merits for such further proceedings as are warranted *335 by the nature of the case and not inconsistent with this decree.
Defendants are cast for the costs of this appeal, and all other costs are to await a final determination of the matter.
Reversed and remanded.