91 So.2d 114 (1956)
CITY OF NEW ORLEANS
v.
Michael LANGENSTEIN, George Langenstein, Richard Langenstein, George & Richard Langenstein, Doing Business as Michael Langenstein & Sons or Langenstein Brothers.
No. 20612.
Court of Appeal of Louisiana, Orleans.
December 10, 1956.
*116 Harry R. Cabral, Harry R. Cabral, Jr., and Lewis R. Graham, New Orleans, for defendants and appellants.
Henry B. Curtis, City Atty., and Luther E. Hall, Jr., and Joseph H. Hurndon, Asst. City Attys., New Orleans, for plaintiff and appellee.
McBRIDE, Judge.
This is an injunction suit in which the City of New Orleans, acting through its Mayor and City Attorney, seeks to enjoin the defendants from occupying and using for business or commercial purposes and to compel them to demolish and remove certain portions of their premises, which are part of No. 1300 Arabella Street in the City of New Orleans, on the ground of violations of the provisions of the Comprehensive Zoning Law of New Orleans (Ordinance No. 11,302, C.C.S.) and New Orleans Building & Electrical Code (Ordinance No. 15,528, C.C.S.). The portions of 1300 Arabella Street in question are:
A. An addition on the Pitt Street side of the original structure and attached thereto measuring approximately 23 feet by 23 feet and extending some 23 feet in the direction of Pitt Street;
B. The addition to the original structure which extends the rear of the original building along Prytania Street for a distance of some 31 feet;
C. The permanent brick structure occupying the entire rear portion of the lot, which structure measures 47 feet 6 inches along Prytania Street and 49 feet from Prytania Street to the dividing line of the adjacent lot No. 5.
The petition alleges and the evidence shows that the part of the premises designated as "A" serves defendants in their operation of an ice cream store; that the property "B" is used as a place where retail liquors are sold; and in building "C," the brick structure, the defendants maintain a walk-in refrigerator which they use in connection with their operations.
It is alleged in the petition that the buildings we have designated as A, B and C were erected without defendants first having secured permits for the building thereof as required by the New Orleans Building & Electrical Code; it is also alleged that building C violates the minimum yard area required by said Code; it is further alleged that all of the said structures, which are situated in an "A Residential" area, are used by defendants for public and commercial purposes contrary to the provisions of the Comprehensive Zoning Law of New Orleans.
The petition further avers that the defendants, in violation of the provisions of both the above-mentioned ordinances, have erected a large electrical advertising sign on the Prytania Street side of structure B and make use of the sign in connection with the operation of their liquor store.
The City prayed for a preliminary injunction against the defendants prohibiting them from occupying or using structures A, B and C for commercial or business purposes and directing them to remove the sign above referred to.
In their answer the defendants set up that they have used the grounds and property on which the improvements known as 1300 Arabella Street are located for commercial purposes, to-wit, for a grocery store and meat market, and that this use has been constant from a time prior to January 1, 1929, which was before the advent of the Comprehensive Zoning Law, and that, therefore, as such use has been continuous and uninterrupted ever since, they have the legal right to continue the operation of their businesses in the buildings A, B and C.
After due trial of the rule nisi issued on defendants to show cause why the preliminary writ of injunction should not be issued, there was judgment making the rule absolute and a preliminary writ of *117 injunction was issued "as prayed for"; defendants have suspensively appealed. However, their appeal was taken to the Supreme Court which, upon a determination that it had not jurisdiction thereof, transferred the appeal to us. See 227 La. 770, 80 So.2d 402. We refused to dismiss the appeal on a motion made by plaintiff. See La.App., 88 So.2d 227.
It is not disputed that prior to the year 1929 (before the adoption of either of the above-mentioned ordinances by the Commission Council of the City of New Orleans), an area measuring approximately 20 feet by 30 feet in the front part of the building (as it then existed) known as 1300 Arabella Street was used as a grocery and meat market, and there is no issue raised that to that extent the original building was used for a lawful nonconforming purpose when the ordinances came into being, and it follows that this original building is unaffected by the provisions thereof.
However, the evidence adduced on the trial of the rule by the City preponderates to the effect that addition A was made about the year 1936 and that it is now actually in use in connection with defendants' business activities. Structure B, that is, the addition located on the rear of the original building, was erected about 1937 and is presently used as the liquor store; construction of the brick building C on the rear of the lot, according to the City's evidence, was commenced in 1946 or 1947, but that before the structure was completed the officials of the City of New Orleans ordered the work stopped. Subsequently, it appears the defendants partially demolished a part of the brick building leaving the walls thereof still standing and within these walls they have erected another structure, known as an accessory building, in which is located a walk-in refrigerator. This is used by defendants in connection with their business venture.
It is a conceded fact that the premises 1300 Arabella Street and the additions A, B and C thereto are located in what Ordinance 11,302, C.C.S., designates as an "A Residential" area, and according to the terms of the ordinance no building or premises in an area so designated may be used for commercial purposes, nor may any building be erected or structurally altered for such usage after June 1, 1929, which was the effective date of the ordinance. Section 3, Ordinance 11,302, C.C.S.
It is clear, then, that if defendants erected structures A, B and C after said ordinance became effective and by carrying on therein their commercial enterprises, the defendants have violated the provisions of the ordinance unless it can be said that the use to which they originally had put the front part of 1300 Arabella Street, to-wit, a store, before the passage of the ordinance, gave them the right to make the alterations and additions and "protects" their present nonconforming usage thereof. The defendants so contend. They advance the argument that whereas the original structure was in nonconforming usage before the adoption of Ordinance 11,302, C.C.S., they acquired the right to enlarge the structure as was done and to use the additions as they have used them; defendants' position is that as a building on the front part of the lot was lawfully used in their business, this gave them the privilege of building anywhere else on the lot as they saw fit, and that any use to which they may have put the buildings can be considered only as nonconforming to the same extent as was the original building. They insist there has been no violation of Ordinance 11,302, C.C.S.
We think that the unambiguous provisions of Ordinance 11,302, C.C.S., completely refute the contention which the defendants have made. Section 3 provides:
"That in the `A' Residence District no building or premises shall be used and no building shall be hereafter erected or structurally altered, unless otherwise provided in this ordinance, * * *."
*118 Section 10(b) pertaining to the existing use of buildings contains the following provisions:
"Existing Use of a Building or Portion thereofThe lawful use of a building, or portion thereof, existing at the time of the passage of this ordinance may be continued * * *, although such lawful existing use of said building or portion thereof, does not conform to the provisions hereof, provided, that the lawfully existing non-conforming use shall not be expanded so as to encroach into any other portion of the building, and provided further, that no structural alterations except those required by law or ordinance shall be made in the non-conforming building or non-conforming part of a building."
It is seen, therefore, that the defendants had not the right to enlarge their original nonconforming usage of the property as they were prohibited from erecting any buildings or structurally altering existing buildings or to expand the area of their field of operations.
Defendants can derive no solace from Act 471 of 1948 (now LSA-R.S. 33:4722) with reference to a local legislative body dividing the municipality into districts within which it may regulate and restrict the erection, construction, alteration or use of buildings, structures or land.
The act in question reads:
"To amend and re-enact Section 2 of Act No. 240 of 1926 entitled An Act Authorizing the legislative body of all incorporated cities, towns and villages, for the purposes of promoting health, safety, morals or the general welfare of the community, to regulate and restrict by ordinance the height, number of stores and size of all buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and use of building, structures, and land for trade, industry, residence or other purpose; to divide such municipalities into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this act; to regulate and restrict the erection, structural alteration or use of building or land therein; to provide for the appointment of a zoning commission; to provide for the adoption of comprehensive zoning plans; to provide for the change of such regulations, restrictions, and boundaries of zones; to provide for a board of adjustment; the taking of testimony and objections and rulings thereon; to provide for the taking of appeals to district courts from the rulings or decisions of the board of adjustment; to provide the method of procedure and for other purposes, and repealing all acts and parts of acts inconsistent with the provisions of this act.
"Section 1. Be it enacted by the Legislature of Louisiana, That Section 2 of Act No. 240 of 1926 be amended and re-enacted so as to read as follows:
"Section 2. For any or all of said purposes the local legislative body may divide the municipality into districts of such number, shape, and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate and restrict the erection, construction, alteration or use of buildings, structures, or land. All such regulations shall be uniform for each class or kind of buildings throughout each district, but the regulations of one district may differ from those in other districts. Provided that no regulations shall be enacted that will affect the status of nonconforming usage has been for commercial purpose wherein said usage of ground constant and consistent from January 1st, 1929, and that said usage has not ceased for a period of six (6) consecutive calendar months."
*119 All that the Legislature meant by Act 471 of 1948, which amended Act 240 of 1926, was that the use of an existing building as of January 1, 1929, was not to be disturbed by the provisions of any subsequently adopted municipal or local ordinance.
It is elementary that a municipality has the right to enjoin violations of a zoning ordinance or building code. The question whether a preliminary injunction shall issue in a given case addresses itself to the sound discretion of the trial judge. A preliminary injunction is nothing more than an interlocutory judgment or decree, the design of which is to preserve and maintain the existing status pending a hearing of the issues by the court on the merits of the controversy. Ridge Park, Inc., v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Drew v. Town of Zwolle, Sabine Parish, 185 La. 867, 171 So. 59; Palama v. Livaudais, 179 La. 201, 153 So. 691; Harris v. Pierce, La.App., 73 So.2d 330.
The judgment appealed from orders the issuance of a preliminary writ of injunction "as prayed for," but we think that the writ should be modified to the extent that it should not order the defendants to remove their electrical sign, for the simple reason that if there is no modification of the preliminary injunction there would be no preservation of the status quo and the injunction would have the effect of actually destroying it by compelling defendants to remove one of their improvements. We cannot believe that by interlocutory order a defendant should be mandated to destroy his property as this might be productive of as much or even more injury to the defendant as that of which the plaintiff in the suit complains. Furthermore, a mandatory injunction is issued only in the enforcement of a judgment or as an auxiliary to a prohibitory injunction previously granted. Town of Leesville v. Kapotsky, 168 La. 342, 122 So. 59.
We think that the electrical sign should be allowed to remain until the final determination of the matter. However, the electrical features of the sign should not be allowed to be in operation and it should be permitted by defendants to remain inert.
Our conclusion is that there is enough evidence in the record to make out a prima facie case to support the issuance of the preliminary writ of injunction, and there appears there was no abuse by the trial judge, save as above noted, of his discretion in the issuance of the writ. Of course, we are not passing on plaintiff's right to a permanent injunction, as this feature of the case must await a trial on the merits.
For the reasons assigned, the preliminary writ of injunction is modified to the extent that the defendants are not mandated to remove their electrical sign; however, defendants should permit it to remain inert; and as thus modified and in all other respects the judgment appealed from is affirmed. The matter is remanded to the lower court for further proceedings in accordance with law. Defendants are to pay the costs of this appeal while all other costs in the case are to await a final determination thereof.
Amended and affirmed.