JOHNSON, Judge.
This is a devolutive appeal taken by intervenors on the side of defendant from an interlocutory judgment granting a preliminary injunction against defendant. The defendant did not appeal, LSA-C.C.P. Articles 1091, 2086.
Petitioner is a Louisiana Public Service Corporation engaged in the business of carrying passengers for hire by motorbus in that part of the City of New Orleans known as Algiers and portions of Jefferson Parish on the west side of the Mississippi River.
In 1906 the City of New Orleans originally granted a public service franchise, to Algiers Railway & Light Company. This original franchise was assigned by mesne conveyance with the approval of the City of New Orleans to Louisiana Power & Light Co., after which the City of New Orleans, on January 20th, 1931, granted a fifty-year franchise to it to'operate motor-bus service in Algiers. In 1949, the Louis *280 iana Power & Light Co., transferred all its physical assets and rights under this franchise to the plaintiff herein for a consideration of $350,000.00. Since that time the plaintiff has been and is presently operating its business of carrying passengers for hire by motorbus without competition.
The New Orleans Public Service, Inc. (hereinafter referred to as NOPSI), is a public utility, one phase of which is a transit system transporting passengers for hire throughout the City of New Orleans on the east bank of the Mississippi River.
On August 3rd, 1961, the council of the City of New Orleans adopted its Ordinance No. 2245 authorizing NOPSI to establish passenger service over two routes between downtown New Orleans on the east bank of the Mississippi River and points in Algiers on the west bank during the periods from 6:30 o’clock a. m. to 9:45 a. m. and from 3:15 p. m. to> 6:15 p. m., the so-called peak hours, only on Monday through Friday of each week, but not on holidays. These two routes would not serve any passengers in those hours not being already served by plaintiff. The plaintiff operates its service from 5 o’clock a. m. continuously until 12:30 a. m. the next day on every day of the year, except in that part of Algiers known as Aurora Gardens where the plaintiff’s busses run from 6 a. m. continuously throughout the day until 7:30 p. m., but do not run on Sundays and holidays.
In this suit on the prayer of plaintiff NOPSI was ordered to show cause why a preliminary injunction should not issue enjoining NOPSI, the only defendant, from in any wise instituting or carrying on motorbus transit service in Algiers and from in any wise interfering with plaintiff in the exercise of its right to conduct its motor-bus transit service in Algiers under and pursuant to the franchise heretofore granted to plaintiff. Plaintiff further prays that there be final judgment maintaining and perpetuating the preliminary injunction accordingly.
The basic allegations of plaintiff’s petition are that it is serving completely the requisites of the two routes assigned to defendant; that if plaintiff is deprived of the revenues resulting from the peak travel on these routes plaintiff’s earnings will not be sufficient to support its operations throughout its system and plaintiff will be forced out of business; that competition under such circumstances and with that result would be illegal, unwarranted and in violation of plaintiff’s rights; that the routes of plaintiff connect the Algiers traffic with the Mississippi River Bridge; that there is no need of any additional service by NOPSI and that by the inauguration of the proposed competing service by NOPSI there will be no saving in cost to the travelling public. Plaintiff further alleges that it is a utility operating under the franchise legally granted to plaintiff; that the franchise is presently in full force and effect; that plaintiff is and always has been willing and able to render at equitable rates all transit service justifiable and required by public convenience and necessity and that it is entitled, by law, to be permitted to render such service without being subjected to unfair competition by another utility heretofore having no rights of franchise in the area plaintiff serves.
The defendant’s answer is a general denial except that it admits that defendant has never rendered service on the west bank and that some streets to be traversed by defendant under this new proposal would be the same as those served by the plaintiff. (There is testimony that since 1958 defendant does send a bus from downtown New Orleans across the Mississippi River Bridge, which bus makes a loop through part of Algiers to return across the bridge.)
Interventions joining with plaintiff in demanding the same relief were filed by Local 1400 Amalgamated Association of Street Electric Railway and Motor Coach Employees of America (AFL-CIO), City of Westwego, Jefferson Parish Council, and City of Gretna.
*281 Interventions uniting with defendant in resisting plaintiff’s demands were filed by West Bank Civic & Improvement Ass’n., Upper Algiers Civic & Improvement Ass’n., and West Aurora Gardens Civic Club. In-tervenors for defendant filed an exception of nonjoinder to make the City of New Orleans a necessary party defendant, and the exception of no right or cause of action. Both exceptions were overruled by the trial court.
On the trial of the rule nisi two witnesses testified for the plaintiff and none for the defendant. Mr. Henry R. Detournay, plaintiff’s operating manager since 1951, said that in 1958, when the New Orleans Council authorized defendant to operate a line from downtown New Orleans to Algiers making “ * * * a loop right in the heart of our Whitney Belt route where we •derived 80 per cent of our revenue” plaintiff lost so much revenue that they were forced to apply for and was granted the right to abandon the Whitney Belt route. With reference to the two routes proposed to be inaugurated by the defendant under this new Ordinance 2245, this witness explained that route 62 runs through an area of heavy population to serve precisely the same territory and people that plaintiff is now serving. From this area defendant would be required to traverse about four •miles where only two homes are located. The other proposed route, #61, runs through the heaviest populated area of old Algiers where plaintiff has always operated its service.
An epitome of Mr. Detournay’s testimony is that it is his opinion that serving these two proposed routes by NOPSI during the so-called peak hours would take away from plaintiff between 60 and 70% of the total number of passengers now carried by the plaintiff (with corresponding reduction in revenue), and that plaintiff cannot continue to operate its 18 hour daily schedule on that basis; that if plaintiff be given authority to abandon altogether the proposed routes to be served by the defendant there would be no service at all on these proposed routes outside of the peak hours, and that plains tiff’s earnings from service over the remaining area would not be sufficient to keep the plaintiff in business.
The other witness for plaintiff, John C. Baine, is president of St. Louis Public Service Company of St. Louis, Mo. From 1927 to 1947, Mr. Baine held various positions with this defendant and when he left New Orleans he was general superintendent of transportation. Mr. Baine was asked the hypothetical question as to what would be his estimate of the percentage of the revenue realized by a public motor transit service during the peak hours of three hours in the morning and three hours in the afternoon. His answer was that from 60% to two-thirds of the revenue of a transit system is realized from the peak hours of the day and • that he does not know of any transit system that can lose such revenue and operate profitably. Pie said further that with the use of private automobiles in every community of the United States it is difficult for a transit utility to earn a proper return on its investment.
Counsel for defendant offered no testimony and submitted the case on the record and the evidence.
It was readily admitted by counsel for plaintiff that the franchise under which this plaintiff operates its utility system is not and was not intended to be an exclusive franchise, and the trial court found as a basic principle that the governing authority could legally grant another franchise to some other transit utility with authority to operate in competition to plaintiff.
With that premise in mind the trial court very properly first determined that the State of Louisiana has expressed a declaration of public policy on this subject in the general law LSA-R.S. 45:161, which as as follows :
“The business of operating (for hire) motor vehicles as common or contract carriers of persons or property for compensation upon the public highways *282 and bridges of this state is a business affected with a public interest.
“The traffic over and condition of the highway system of the state render it imperative that uniform, reasonable and just regulation of this business be employed to conserve the interest of the general public, protect the public highways from undue wear, minimize the inconvenience to other highway users, safeguard the needs of the public for adequate motor transportation, prevent irresponsible operation detrimental to the general welfare, minimize congestion on the highway, adjust, correlate and coordinate the various transportation agencies using the highways so the public will be given the benefit of the most economic and efficient means of transportation without discrimination against legitimate forms of transportation, and foster sound economic conditions among all classes of carriers.”
The trial court then made a finding of facts from the documents and testimony in evidence to the effect that the entrance of 1STOPSI with transit service in competition to plaintiff will adversely affect the revenue of plaintiff “ * * * to such an extent that plaintiff will either be required to abandon the transit facilities which it now furnishes or will be operating its transit service in an unsound economic condition,” which the court held would be a violation of the declaration of public policy of this state. The court further said: “That a court cannot condone any act which does violence to the public policy of the state and which, by violating the public policy of the state, will cause irreparable injury.” Judgment was rendered making the rule absolute and granting the preliminary injunction as prayed for.
We agree that the judgment making the rule absolute and granting the preliminary injunction is correct. By this, however, we do not hold, as it is not necessary to hold, that the evidence as we find it is definite enough to prove beyond question that the entrance of the defendant into competition with plaintiff along the routes and within the hours outlined by Ordinance #2245 would put the plaintiff out of business. In our opinion the testimony of plaintiff’s two witnesses is at best a generalization of their opinions but not supported by any concrete facts to prove their estimates. Whether supporting facts are available or producible is not for us to say. The testimony is sufficient to make out a prima facie case which entitles the plaintiff to temporary relief until the trial and decision of the case on the merits. That is all that was before the court and applying proper import to the court’s findings, that is all the trial court held, notwithstanding the positive language it employed to recite its reasons for the judgment it rendered.
 There is before us now the application of the universal rule that the granting or refusal of a preliminary injunction on summary trial of a rule to show cause is interlocutory in nature to determine whether the evidence is sufficient to preserve the status quo pending a trial and decision on the merits and that the question addresses itself to the sound discretion of the trial court. How the trial judge exercises that discretion will not be disturbed on appeal except for very plain and obvious reasons. Counsel for plaintiff and appellee has cited and quoted in his brief from these several of many cases on this subject: Palama v. Livaudais, 179 La. 201, 153 So. 691; Drew v. Town of Zwolle, 185 La. 867, 171 So. 59; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Noe v. Maestri, 193 La. 382, 190 So. 588; Brooks v. Chinn, La.App., 52 So.2d 583; Harris v. Pierce, La.App., 73 So.2d 330. See also City of New Orleans v. Langenstein, La.App., 91 So.2d 114 (119), where this court, through Judge McBride, said:
“ * * * The question whether a preliminary injunction shall issue in a given case addresses itself to the sound discretion of the trial judge. A preliminary injunction is nothing more *283 than an interlocutory judgment or decree, the design of which is to preserve and maintain the existing status pending a hearing of the issues by the court on the merits of the controversy. Ridge Park, Inc. v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128; Foscue v. Mitchell, 185 La. 963, 171 So. 91; Drew v. Town of Zwolle, Sabine Parish, 185 La. 867, 171 So. 59; Palama v. Livaudais, 179 La. 201, 153 So. 691; Harris v. Pierce, La.App., 73 So.2d 330.”
Applying that well-settled principle to the evidence in this case we agree that the judgment appealed from is correct and it is affirmed.
Affirmed.