HALL, Judge.
Defendant prosecutes this suspensive appeal from a judgment granting a preliminary injunction in plaintiffs’ favor enjoining him from maintaining a chain-link fence on his property in violation of subdivision title restrictions, and ordering the defendant to remove the fence insofar as it violates such restrictions.
*107 The three plaintiffs and defendant are all homeowner residents of Green Acres Subdivision in Jefferson Parish. The properties owned by the parties as well as all of the other lots in this subdivision are encumbered with a number of title restrictions, among such restrictions being the following :
“(16) Fences shall not be erected between the front lot line and the front sill line of the main building.”
In 1963 defendant erected a chain-link fence on his property which it is conceded violates the above quoted restriction. His only defense is that there have been such multiple, general, and substantial violations of this restrictive covenant, without protest from the other landowners in the subdivision, as to amount to a waiver or abandonment thereof. He relies upon the rule stated in Edwards v. Wiseman, 198 La. 382, 3 So.2d 661 that “ * * * In the instances where the violations have been so general or substantial without protest as to defeat the objects and purposes of the building restrictions, the courts have held that the restrictions are waived or relinquished and cannot subsequently be enforced. * * * ”
After a careful review of the • record and a study of the applicable law we are of the opinion that the learned Trial Judge in his written “Reasons for Judgment” has accurately stated the facts and the legal conclusions flowing therefrom and we approve and adopt as our own the ■ following excerpt therefrom:
“The sole issue, presented by the defense asserted on behalf of the defendant, is whether there exists such multiple, general, and substantial violations of these restrictive covenants, without protest by the property owners, as to legally constitute a common consent or universal acquiescence in their waiver or abandonment.
“Under the jurisprudence of this State in adjudicating this issue, the Court must consider: (a) the number of violations; (b) the character of the violations; and (c) the reaction of the property owners toward the violations. All three of these elements must preponderate in favor of the contention that the restrictions have been waived or abandoned. In other words, there must be multiple similar breaches of the protective covenants without objection from the interested property owners in order for this legal consequence to prevail.
“On the trial of this matter, the defendant presented evidence of thirty-eight (38) alleged violations of this restriction prohibiting the erection of a fence between the front lot line and the front sideline (sic) of the main building. This evidence must now be interpreted in relation to the norms established by the Appellate Court to determine whether it cotí-stitutes a waiver or abandonment by the property owners.
“Assuming arguendo that there were actually thirty-nine (39) (sic) violations of this restriction, the Court is of the opinion that they are not numerically sufficient to constitute multiple violations when considered in relation to the approximately 900 to 1000 dwellings located in the subdivision. In other words, the number of violations in proportion to the total number of homes is comparatively insignificant and is not so manifestly disproportionate as to lead to the conclusion that there exists general and multiple violations of the covenant.
“The second factor to be considered by the Court is the character of the thirty-eight (38) alleged violations urged by the defendant. A careful consideration of this evidence reveals that approximately ten (10) of these violations consisted of metal or wooden structures which would constitute a fence, whereas *108 the remainder consists primarily of hedges or other decorative shrubs. In view of the failure of the restrictions to expressly prohibit the planting of shrubs along the said property line, the Court can only conclude that such action was permissible. There is nothing to indicate that the planting of shrubs and hedges in such a manner constituted a fence within the purview and scope of the above set forth restriction. The Court, therefore, finds as a matter of fact that there were approximately only eleven (11) violations of the restrictions, which would lend further confirmation of its prior conclusion that multiple violations of the restriction did not exist.
“The evidence clearly establishes that the property owners in this subdivision banded together and voluntarily formed the Green Acres Civic Association for the purpose of maintaining dnd preserving the quality and character of their neighborhood. This organization published a monthly bulletin of local information, including any violations of the subdivision restrictions. Their officers also attempted to have the individual owner amicably agree to comply with the restrictions. Although in some instances they were not successful in having voluntary compliance, nonetheless, these isolated instances did not deprive the plaintiffs from objecting to the defendant’s breach of the covenant, nor will it preclude them from obtaining injunctive relief. Unquestionably, the property owners in this subdivision, including the plaintiffs, have constantly and zealously attempted to enforce strict compliance with the restrictive covenants applicable to their property. Rather than reflect a lack of opposition to these violations, the evidence establishes the contrary.
“In accordance with the view of the Appellate Court, expressed in Cunningham v. Hall, 148 So.2d 808, restrictive covenants must be strictly construed against the property upon which it is imposed, and the burden rests with the owner to establish, with a preponderance of evidence, his right to be released from the effects thereof. The Court concludes that the defendant has failed to establish that there has been such a multiple, general, and substantial violation of the restrictive covenant without protest by the property owners as to constitute a universal acquiescence in their waiver and abandonment.”
The evidence presented by defendant relative to violations of the restriction consisted in 38 photographs taken by Mr. Ralph Sneed, a photographer, who was employed by defendant for the purpose of locating and photographing the violations. Defendant contends that the Trial Court erred in not giving consideration to Mr. Sneed’s testimony that if he had not run out of film he estimated that he “would have found at least another forty to fifty violations.” We find no error in the fact that the Court gave no weight to such testimony.
 Defendant also contends that the Trial Court erred in holding that a hedge does not constitute a violation of the restriction. We are of the opinion that a hedge is not a “fence” within the meaning of the restriction, but conceding arguendo (as did the Trial Judge) that there were actually 38 violations of the restriction, we are of the opinion that 38 violations are insufficient, when considered in relation to the fact that there are 900 to 1000 dwellings in the subdivision, to show general and multiple violations of the covenant. (See generally Guyton v. Yancey, 240 La. 794, 125 So.2d 365; Edwards v. Wiseman, 198 La. 382, 3 So.2d 661; Rhodes v. Foti, 54 So.2d 534; Hill v. Wm. P. Ross, Inc., 166 La. 581, 117 So. 725; Harris v. Pierce, La.App., 73 So.2d 330).
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by defendant-appellant.
Affirmed.