## ORCHID LAKE VILLAGE HOMEOWNERS ASSOCIATION, INC. v HOWELL

Case No. 86-2936CA

Sixth Judicial Circuit, Pasco County

November 6, 1987

### APPEARANCES OF COUNSEL

**Donald R. Peyton** for plaintiff.

**James C. Campisi** for defendant.

### OPINION OF THE COURT

W. LOWELL BRAY, JR., Circuit Judge.

The plaintiff, ORCHID LAKE VILLAGE HOMEOWNERS ASSO-

CIATION, INC., sued the defendants, JOHN F. HOWELL and JANET L. HOWELL, to enforce a deed restriction which applies to the defendants' property and states:

"8. No fences shall be erected or maintained on any lot or lots which shall be in excess of four (4) feet in height, except hedges of shrubbery, which shall not exceed an average height of five (5) feet. Said fences shall conform and be in keeping with the type of structure and architectural design of the house to which it is appurtenant and in all respects be of pleasing appearance."

This matter came on for final hearing upon facts stipulated by the parties. The Court finds the following pertinent facts:

1. The deed restriction was duly and properly recorded on April 18, 1980, and constitutes a covenant running with the land.

2. The restriction applies to the defendants' property as well as approximately 629 other lots which constitute the subdivision.

3. Defendants have erected a fence in excess of four feet tall on their property.

4. Within the subdivision there are multiple violations of the subject restriction, they are as follows:

a) The developer erected (after recording the restriction) six foot privacy fences between certain sections of the subdivision and adjacent land. These fences are presently located on 20 of the lots, including the subject lot (not the fence in question).

b) Fifteen additional lots have fences which are over six feet and are in clear violation of the restriction.

c) Three lots have six foot fences which were built after the owners received "waivers" from the present developer, a successor of the developer which recorded the restriction.

d) Nine lots have structures which are in excess of six feet and may or may not be encompassed by the term "fences".

e) Owners of five lots have previously been forced by the plaintiff herein to reduce or remove fences which were in excess of four feet.

f) The defendants, owners of Lot 139, have erected a six foot fence along the property line between their property and Lot 138.

g) Both Lots 138 and 139 have six foot privacy screen fences, erected by the developer along their rear property lines.

The defendants raised two purposed defenses. First, they argue that

the developer, by retaining the right to amend the deed restrictions and then building privacy fences in apparent violation of the fence restriction, created inherent ambiguity as to the meaning of the fence height restriction. Second, the defendants argue that the subject restriction has been abandoned and waived by the silence and acquiescence of the developers and lot owners of the subdivision.

Defendants' first purposed defense is without merit. There is no ambiguity in the restrictions as recorded. The latter actions of the developer do violate the restrictions but do not constitute an amendment of the restrictions. The restrictions remain, as when first recorded, unambiguous.

The defense of abandonment and waiver is not so easily disposed of. As recently as 1984, the Second District Court of Appeal has recognized, and approved, the principal that a court of equity may refuse to enforce a restrictive covenant because of acquiescence, waiver, and abandonment. *Don Cesar Property Owners Corporation v. Gallagher,* 452 So.2d 2047 (Fla. 2d DCA 1984). Unfortunately, the opinion in the *Don Cesar* case does not recite any facts or offer any test which would assist us in determining when acquiescence, waiver, and abandonment have occurred. Consequently, we must look to a 60 year old Florida Supreme Court decision and opinions from foreign jurisdictions for guidance.

In *Stephl v. Moore,* 144 So. 455 (Fla. 1927), the Court accepted but refused to apply the defense of abandonment or acquiescence in a case where 17 of 120 lots (14.2%) had houses built in violation of a deed restriction.

In *Romig v. Modest,* 102 Ohio App. 225, 142 N.E. 2d 555 (Ohio Ct. App. 1956), the Court considered this defense and said that the test was ". . . whether in view of what has happened there is still a substantial value in the restriction . . .", Page 559. The Court found that the erection of fences on 14 of 53 lots (25%) "did not substantially affect the architectural scheme and general landscaping of the area so as to render the enforcement of the restriction of no substantial value to the property owners.", Page 559.

In *Rich, et ux. v. Isbeg,* 288 N.W. 353 (Mich. 1939), the Court found a violation of a fence restriction to be *de minimus* and refused to enforce a restriction against hedges on the theory that the restriction had been abandoned and waived. The Court notes violations ". . . extend more or less throughout the entire plat", that there ". . . is not a single block on the plat on which there is not some violation . . ." and that, of the 368 lots in the subdivision, approximately 63 lots

60

(17%) have violations in front of the lot and approximately 100 (27%) have violations on the sidelines, Page 354. The Court notes that "Hedges are so numerous and so generally prevalent throughout the subdivision that knowledge of such abandonment would result from the most casual observation.", Page 354.

Perhaps the most helpful case in this area is *Fisher v. Smith,* 190 So.2d 105 (La. Ct. App. 1966). The Court found that 38 violations of a covenant in a subdivision of 900 to 1,000 dwellings (approximately 4%) was not a waiver or abandonment. However, the Court considers the question under a three prong test set out by the trial court as follows:

> "Under the jurisprudence of this State in adjudicating this issue, the Court must consider: (a) the number of violations; (b) the character of the violations; and (c) the reaction of the property owners toward the violations. All three of these elements must preponderate in favor of the contention that the restrictions have been waived or abandoned. In other words, there must be multiple similar breaches of the protective covenants without objection from the interested property owners in order for this legal consequence to prevail." Page 107

This Court adopts the *Fisher* test and considers the instant case in light of it. The evidence shows that at most, 46 of the 630 lots (7%) have violations maintained upon them. The violations fall into roughly four types as set out in 4 (a-d) above. The Court questions but does not rule on the validity of the "waivers" granted by the present developer and for purposes of this discussion treats these fences as clear violations. The structures whose nature (fence v. non-fence) are in dispute seem to include some which are considerably different from the fence complained of; however, the Court has inadequate information to make a finding on this point. With respect to the 20 lots which have privacy screens (6 foot wooden fences) erected by the developer, the Court notes that these fences do not intrude into the subdivision, block visibility in the subdivision, or have a negative or pejorative effect on the architectural scheme and general landscaping of the subdivision. In fact, the purpose of erecting them was to preserve and protect the nature of the neighborhood. Consequently, they are significantly different from the violation complained of. The plaintiff herein has actively sought to enforce the restriction as evidenced by the fact that five other lot owners have previously been required to reduce fences from six feet to four feet.

The Court finds that the defendants' evidence does not reach a preponderance under any one of the three prongs of the *Fisher* test much less under all three. It is therefore

61

ORDERED AND ADJUDGED that the petition is granted and the defendants, JOHN F. HOWELL and JANET L. HOWELL, are hereby enjoined from maintaining the non-conforming fence on their property and are ordered to remove the structure forthwith. The Court reserves jurisdiction to determine and tax appropriate costs and fees.

DONE AND ORDERED in Chambers, at New Port Richey, Pasco County, Florida, this 6th day of November, 1987.