STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**18-811**

DUSTIN AUCOIN & ASHLEY AUCOIN

VERSUS

COPPER MEADOWS HOMEOWNERS ASSOCIATION, INC.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20175067
HONORABLE DAVID M. SMITH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Van H. Kyzar, and Candyce G. Perret, Judges.

**AFFIRMED.**

Shane E. A. Romero, Jr.
Law Office of Shane E. Romero, L.L.C.
110 E. Pershing Street
New Iberia, LA 70560
Phone (337) 321-6945
COUNSEL FOR DEFENDANT/APPELLANT:
    Copper Meadows Homeowners Association, Inc.

Stuart Paul Bowie
Colomb and Saitta, LLC
113 Oil Center Drive
Lafayette, LA 70503
Phone (337) 231-5250
COUNSEL FOR PLAINTIFFS/APPELLEES:
    Dustin Aucoin
    Ashley Aucoin

**KYZAR, Judge.**

The defendant, Copper Meadows Homeowners Association, Inc., appeals from a trial court judgment declaring the property of the plaintiffs, Dustin and Ashley Aucoin, free from a restriction set forth in the subdivision's covenants, enjoining it from further attempting to enforce the restriction, and ordering the return of a fine imposed for an alleged violation of the restriction. For the reasons set forth, we affirm.

## DISCUSION OF THE RECORD

The plaintiffs, Dustin and Ashley Aucoin, are the owners of a house and lot located at 107 Meadow Lake Drive in Youngsville, Louisiana, which is part of the Copper Meadows Subdivision, Phase II, established through the defendant, Copper Meadows Homeowners Association, Inc. (Copper Meadows). On September 1, 2017, the Aucoins filed a Petition for Declaratory Judgment and Request for Permanent Injunction against Copper Meadows, seeking to have their property declared free from the effects of a subdivision restriction prohibiting the parking of trailers on or in front of the homes located within the subdivision. The petition specifically pled the two-year liberative prescription period for enforcement of restrictive covenants after a noticeable violation, as set forth in La.Civ.Code art. 781. The petition also sought the return of a $25.00 fine imposed and drafted from the Aucoins' bank account by Copper Meadows for an alleged violation of the restriction.

It is undisputed that at the time the Aucoins purchased their house and lot in February 2010, Provision 18 of the Act of Dedication and Restrictive Covenants of Copper Meadows Subdivision, Phase II, read as follows:

> The placing and parking of house trailers or mobile homes on any lot in the subdivision shall be prohibited. No motor home, travel trailer, camper or other similar recreational vehicle may be used as a residence

on any lot and any such vehicle, as well as any boats and boat trailers, must be parked and kept behind the front set-back line within a closed building or behind a fence at least six (6') in height. No vehicle may be parked on the street in front of any residence longer than twenty-four (24) hours and no vehicle may be placed on blocks or any immovable positions on any lots or street in this subdivision.

At that time, Provision 20 of the Act of Dedication and Restrictive Covenants of Copper Meadows Subdivision, Phase II, also read, in part, as follows:

Notwithstanding anything to the contrary contained herein, until all of the lots in the Subdivision are disposed of by the Developer, these restrictions, including, but not limited to, front, side, or rear line set-back requirements, may be amended unilaterally by an act executed by Developer without the written consent of any other owner or purchaser of said lot or lots provided, however, that no amendments may be enacted without the written consent of all owners where such amendments affect restrictions related to the manner in which these lots may be utilized (i.e. residential).

On January 10, 2014, Copper Meadows amended Provision 18 of the Act of Dedication and Restrictive Covenants of Copper Meadows Subdivision, Phase II, to read as follows:

The placing and parking of house trailers or mobile homes on any lot in the subdivision shall be prohibited. No motor home, travel trailer, camper or other similar recreational vehicle may be used as a residence on any lot, and any such vehicle, as well as any boats, boat trailers, or other trailers, must be parked and kept behind the front set-back lines within a closed building or behind a fence at least six feet (6') in height. No vehicle may be placed on blocks or an immovable position on any lots or streets in this subdivision.

The Aucoins claim that Dustin Aucoin works as a professional plumbing contractor and utilizes a cargo trailer in connection with his business. The Aucoins assert that the trailer has been parked in front of their home on almost every evening during the workweek, between the hours of 6:00 p.m. and 6:00 a.m., and all day and evening during the weekends since they purchased their home in February 2010. Copper Meadows attempted to cite and fine the Aucoins in 2013, for violating the original Provision 18 of the Covenants, but withdrew the action after protest by the Aucoins. After this incident, Copper Meadows amended Provision 18 on January

2

10, 2014, to specifically prohibit the parking of trailers in front of the lots within the subdivision. The Aucoins assert that they continued to park their trailer in front of their home after the amendment, and that in August 2017, Copper Meadows again cited and fined them another $25.00, which they again protested. The fine was auto-drafted from the Aucoins' bank account. While cited numerous times thereafter for alleged successive violations of the same provision, Copper Meadows did not draft the requested fine amounts from the Aucoins' account.

Copper Meadows answered the petition, denying the claim that Provision 18, as amended, was unenforceable as prescribed based on the Aucoins' continuous use of the property in violation of the provision for over three years. Copper Meadows further filed a reconventional demand that alleged that the Aucoins were cited numerous times for violations of the restriction and that they owed a total of $750.00 in fines for these violations.

The matter was tried on May 8, 2018. At trial, the Aucoins and Copper Meadows entered into a formal stipulation for the testimony of various witnesses. The parties stipulated that Floyd and Alice Kidder would testify that they have lived at 110 Meadow Lake Drive since 2008, are members of Copper Meadows, and that when the Aucoins moved into the neighborhood in 2010, Mr. Aucoin immediately started parking his trailer on the street outside of his home. The Kidders testified that Mr. Aucoin's trailer was always attached to his truck and that he typically parked his trailer outside his home between the hours of 6:00 p.m. and 6:00 a.m., Monday through Friday. They further testified that he also parked his truck outside his home on holidays, during the weekends, and sometimes randomly during the week. The Kidders further testified that they never reported the Aucoins' violations to Copper Meadows.

3

The parties stipulated that Tim and Stacie Doucet would testify that they have lived at 112 Meadow Lake Drive since 2007, are members of Copper Meadows, and that after the Aucoins moved into the neighborhood in 2010, Mr. Aucoin immediately started parking his trailer on the street outside of his home. The Doucets testified that Mr. Aucoin's trailer was always attached to his truck, that he typically parked his truck and trailer outside his home between the hours of 6:00 p.m. and 6:00 a.m., Monday through Friday, but that he also parked his truck and trailer outside his home on holidays, during the weekends, and sometimes randomly during the week. They further testified that they never reported the Aucoins to the Copper Meadows.

The parties stipulated that Derek Aucoin, Mr. Aucoin's brother and employer, would testify that Mr. Aucoin worked as an emergency contact plumber, that he has taken the trailer home with him for the past thirteen years, and that every time he visited Mr. Aucoin, which was once or twice a month, the trailer was parked outside of the Aucoins' home.

The parties stipulated to the testimony of Bess Trahan, a resident of Copper Meadows Subdivision since 2012, and a member of Copper Meadows' board of directors and its violations committee since 2012. As a member of the violations committee, she testified that she conducted inspections for violations of the restrictive covenants on Tuesdays, between the hours of 8:00 a.m. and 5:00 p.m. She stated that she regularly passed through the subdivision at other times, and if she noticed a violation of the restrictive covenants, she reported the matter to the board of directors. Ms. Trahan testified that each member of the violations committee conducted inspections on a rotating weekly schedule. Her inspections took approximately one and one-half hours and consisted of driving in front of each home on every street in the subdivision. At no time prior to July 19, 2017, did she ever

4

notice the Aucoins parking a trailer adjacent to the sidewalk or on the street in front of their residence. Ms. Trahan testified that on July 19, 2017, the board of directors received an anonymous report that the Aucoins were parking a trailer in front of their residence. She stated that the board of directors conducted an investigation into the matter and determined that the Aucoins were in violation of Provision 18 of the January 10, 2014 Amended Restrictive Covenants. She said that a fine was issued to the Aucoins based on the violation, and the board of directors continued to check on the Aucoins for the same violation. Ms. Trahan testified that the board of directors cited the Aucoins a total of five times. She stated that the board of directors intended to enforce the restrictive covenants for the subdivision, enjoin the Aucoins from parking their trailer in front of their residence, and seek all attorney fees and costs associated with this lawsuit, as provided by the restrictive covenants.

The stipulation further included the testimony of Heather Abshire, a resident of Copper Meadows Subdivision since 2013, and a member of Copper Meadows' board of directors and violations committee since 2014. As a member of the violations committee, she testified that she conducted inspections for violations of the restrictive covenants on Tuesdays, between the hours of 9:00 a.m. and 6:00 p.m. and that she regularly drove through the subdivision at other times. She stated that if she noticed a violation of the restrictive covenants, she reported the matter to the board of directors. Ms. Abshire testified that each member of the violations committee conducted inspections on a rotating weekly schedule. She stated that her inspections took approximately one and one-half hours and consisted of driving in front of each home on every street in the subdivision.

Ms. Abshire testified that at no time prior to July 19, 2017, did she ever notice the Aucoins parking a trailer either adjacent to the sidewalk or on the street in front of their residence. She stated that the board of directors received an anonymous

5

report on July 19, 2017, that the Aucoins were parking a trailer in front of their residence. She stated that the board of directors conducted an investigation into the matter and determined that the Aucoins were in violation of Provision 18 of the January 10, 2014 Amended Restrictive Covenants. She said that as a result of the violation, the Aucoins were issued a fine. Ms. Abshire testified that the board of directors continued checking the Aucoins for the same violation and that it eventually cited them a total of five times. She stated that the board of directors desired to enforce the restrictive covenants for the subdivision, enjoin the Aucoins from parking their trailer in front of their residence, and seek all attorney fees and costs associated with this lawsuit, as provided by the restrictive covenants.

Mrs. Aucoin testified before the trial court that she and Mr. Aucoin moved into the house at 107 Meadow Lake Drive in Youngsville, part of the Copper Meadows Subdivision, Phase II, on February 2, 2010. Since then, she stated that Mr. Aucoin has parked his work truck and trailer in front of their home seven days per week. She stated that during the normal workweek, Mr. Aucoin would leave the house around 6:00 a.m. and then return home around 6:00 p.m. She said that he also parked his truck and trailer in front of their home on the weekends and that his weekend work schedule was more sporadic. Mrs. Aucoin testified that Mr. Aucoin was home for the majority of holidays unless he was called out for an emergency plumbing job. She stated that unless he was out working, his truck and trailer were always parked in front of their home.

Mrs. Aucoin testified that in addition to the other witnesses, she knew that Copper Meadows' board of director members Jamie Abshire and Dave Pierrett knew that Mr. Aucoin parked his truck and trailer in the front of their home, as she and Mr. Aucoin had spoken to them about the issue. She stated that Copper Meadows attempted to fine them for the alleged violation in 2013, but that it backed off. Mrs.

6

Aucoin identified a series of pictures taken during their residence at 107 Meadow Lake Drive, that showed the trailer parked in front of their home on various dates, including five pictures that were after 2014, specifically May 18, 2014; October 31, 2014; May 27, 2015; June 6, 2015; and August 9, 2017. These five photographs, along with other similar ones, were introduced into the record as evidence. Mrs. Aucoin testified that it was not until July 19, 2017, that they began to be fined for violating Provision 18. She stated that the first $25.00 fine was auto-drafted from their bank account because they had set up a bank draft with Copper Meadows to pay their homeowners association dues. Mrs. Aucoin testified that Copper Meadows issued the following fines against them: a $50.00 fine on August 3, 2017; a $100.00 fine on August 8, 2017; a $200.00 fine on August 17, 2017; and a $400.00 fine on August 22, 2017. She stated that they only paid the first fine. She finally stated that they were not cited for violating Provision 18 between the beginning of 2014 until July 19, 2017.

Mr. Aucoin testified that he is employed as a surface plumber by his brother Derek Aucoin. He stated that his normal work hours have him leaving his home at 6:15 a.m. and then returning at approximately 6:00 p.m. He said that he is typically on call during the weekend, and he may work either in the morning or the afternoon if he is called out for an emergency. He stated that he is normally home on holidays, unless he is called out on an emergency. Mr. Aucoin testified that Dave Pierrett, a four-year president of Copper Meadows and member of the board of directors, has known for years that he parks his trailer in the front of his home. He stated that he specifically spoke to Mr. Pierrett, who is also a plumber, about this issue.

Jeffery Segura testified that he moved into the Copper Meadows Subdivision, Phase II, in August 2014, and was a member of Copper Meadows' board of directors from August 2015 to February 2018. He stated that he served as secretary to the

7

board of directors and that he was chair of the violations committee, which consisted of three or four members. Mr. Segura testified that it was the duty of the violations committee to enforce the subdivision covenants through weekly inspections, which consisted of driving through the subdivision and checking for noticeable violations. He stated that the inspections were done every Tuesday, and the duties were rotated weekly between the various members of the violations committee. He said that if a violation was noticed, the homeowner was forwarded a notice of a fine. Mr. Segura testified that in addition to the formal inspections, the members of both the violations committee and the board of directors were instructed to look for violations whenever they drove through the subdivision. He stated that every time he left his house, jogged, or rode his bicycle, he looked for violations. He said that despite the fact that he lived a couple of blocks from the Aucoins and that he and his children rode their bikes frequently by their house, he never witnessed a trailer parked in front of the Aucoins' house. Mr. Segura further testified that neither he nor Copper Meadows had notice that the Aucoins were violating Provision 18 until 2017, shortly before the citations were issued, and that the notice was based on an anonymous tip.

Judgment was rendered in favor of the plaintiffs at the conclusion of the trial on May 8, 2018, pursuant to the trial court's oral reasons. A formal judgment was signed on July 11, 2018, and this appeal followed.

Copper Meadows asserts three assignments of error on appeal, as follows:

1. The District Court erred as a matter of law and the July 17, 2018 judgment maintaining Provision 18 of the Act of Dedication and Restrictive Covenants of Copper Meadows Subdivision, Phase II, to be inapplicable to Dustin Aucoin and Ashley Aucoin, 107 Meadow Lake Drive, Youngsville, Louisiana should be reversed.

2. The District Court erred as a matter of law in denying Copper Meadows Homeowners Association's injunction to enjoin Dustin Aucoin and Ashely Aucoin from parking a trailer in front of their residence in violation of the restrictive covenants of the subdivision.

8

3. The District Court erred as a matter of law in denying Copper Meadows Homeowners Association's fines, as well as an award of attorney fees, relative to the violation of the restrictive covenants of the subdivision by Dustin Aucoin and Ashely Aucoin.

## OPINION

The question presented on appeal is whether a noticeable violation of Provision 18, as amended effective January 2014, occurred for over two years, such that the provision is unenforceable against the Aucoins' property. In its brief, despite having designated the alleged errors of the trial court as errors of law, Copper Meadows correctly asserts that the standard of review on appeal is manifest error. The manifest error standard of review applies to the trial court's factual finding that a noticeable violation of the restrictive covenant in question occurred for over two years without action on the part of the other property owners or Copper Meadows itself. *Cosby v. Holcomb Trucking, Inc.*, 05-470 (La. 9/6/06), 942 So.2d 471.

> Under the manifest error standard of review, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong. *Smith v. Louisiana Dept. of Corrections*, 93-1305 (La.2/28/94), 633 So.2d 129, 132; *Stobart v. State through Dept. of Transp. and Development*, 617 So.2d 880, 882 (La.1993); *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989). In order to reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous. *Id.* The appellate court must not re-weigh the evidence or substitute its own factual findings because it would have decided the case differently. *Id.*; *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 01-2217 (La.4/3/02), 816 So.2d 270, 278-79. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* However, where documents or objective evidence so contradict the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based on a credibility determination. *Rosell, supra* at 844-45. But where such factors are not present, and a fact finder's finding is based on its decision to credit the testimony of one or two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

*Id.* at 479.

9

The supreme court, in *Cosby*, 942 So.2d at 475, further set out the nature, history, and legal precepts of building restrictions and restrictive covenants on real property in Louisiana:

> In 1977, the Louisiana Legislature enacted a new Title V of Book II of the Louisiana Civil Code regulating building restrictions. Accordingly, Articles 775-783 of the Louisiana Civil Code now define and govern building restrictions. Because prior to 1977 the Civil Code did not specifically address building restrictions, these new articles generally codified the existing jurisprudence.
>
> Building restrictions are defined as "charges imposed by the owner of an immovable in pursuance of a general plan governing building standards, specified uses, and improvements." La. C.C. art. 775. "The plan must be feasible and capable of being preserved." La. C.C. art. 775. "The law is clear that building restriction clauses constitute real rights, not personal to the vendor, and inure to the benefit of all other grantees under a general plan of development, and are real rights running with the land; and that the remedy of the other grantees to prevent a violation of the restrictions by another is by injunction." *Oakbrook Civic Ass'n, Inc. v. Sonnier*, 481 So.2d 1008, 1010 (La.1986) (citing *Edwards v. Wiseman*, 198 La. 382, 3 So.2d 661 (1941)). "Building restrictions may impose on owners of immovables affirmative duties that are reasonable for the maintenance of the plan." La. C.C. art. 778.

As reflected above, our laws governing building restrictions and restrictive covenants are set forth in the Louisiana Civil Code. Louisiana Civil Code Article 779 provides that "[b]uilding restrictions may be enforced by mandatory and prohibitory injunctions without regard to the limitations of Article 3601 of the Code of Civil Procedure." Building restrictions can terminate by the abandonment of the whole plan set forth in the restrictions, whereby the entire plan is abandoned and the affected area is freed of all restrictions, or by a general abandonment of any particular restriction, causing the affected area to be freed of only that restriction. La.Civ.Code art. 782. Finally, any "[d]oubt as to the existence, validity, or extent of building restrictions is resolved in favor of the unrestricted use of the immovable." La.Civ.Code art. 783.

10

Louisiana Civil Code Article 781 (emphasis added) sets forth the time period within which a party must institute a lawsuit based upon violation of a building restriction:

> No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the *immovable on which the violation occurred is freed of the restriction that has been violated.*

According to the Official Comments to this article, "[t]his prescription does not merely bar actions for the enforcement of building restrictions as *sui generis* real rights; it extinguishes the real right itself in the same way that the prescription of nonuse extinguishes the right of a servitude." La.Civ.Code art. 781, Official Revision Comments (b). In *Nepveaux v. Fitzgerald*, 480 So.2d 346 (La.App. 3 Cir. 1985), we held that the time period provided in La.Civ.Code art. 781 is a peremptive period, and thus, upon expiration of the two-year period after a noticeable violation, a cause of action or substantive right based on the violation of a building restriction no longer exists to be enforced.

The trial court gave extensive oral reasons for its judgment, as follows:

> The Aucoins, I find they purchased the lot in 2010, wherein they continued to park a truck and trailer, noticeably a large truck and trailer, and that would not even fit in his backyard because of the size of it, in 2010, and parked it there through 2013, and parked it there through 2017 continually. I know 2013 because the homeowners association at that point fined the Aucoins in regard to some violations for parking on the road.

> Even though at that point it may have been unenforceable, from what I'm gathering from the evidence, but in any event, the fines were waived at that point. But I find that the homeowners association had knowledge at that time that they were parking on the road and actually fined the Aucoins.

> In 2013, November, the restrictions were amended to go into effect in January 2014, wherein during that period Mr. Aucoin continued to park on the road. From that point on, all the way through August, I believe, of 2017, the parking of the truck and trailer continued on the road.

11

I find that the continued parking of the large truck and trailer wherein the pictures were entered into evidence, as well as the stipulations of the neighbors, constituted a noticeable violation of the Aucoins and of Section 18. The problem is there was no violation or notice brought to their attention and no fines being submitted until well after two years. It was over 2-1/2 years before the homeowners association even took any action.

I find the plaintiff has met his burden of proof [sic]. What else I find interesting is for 2-1/2 years, from '14 until August of '17 when Mr. Aucoin continued to park on the road, the homeowners association never found any violations. But then therein after August of '17, they were able to find weekly violations and noticed the Aucoins for that for five weeks in a row.

With that being said, I declare that the lot that – the Aucoins lot at 107 Meadow Lake Drive in Copper Meadows Subdivision is free of the restriction in Paragraph 18 of the covenants.

We find no manifest error in the decision reached by the trial court. Multiple witnesses, including members of Copper Meadows, testified that Mr. Aucoin always kept his trailer attached to his truck and parked his truck and trailer outside their home between the hours of 6:00 p.m. and 6:00 a.m., Monday through Friday. There was also testimony that he parked his trailer outside his home on weekends and holidays. It is evident that Copper Meadows knew in 2013, that the trailer was being parked in front of the Aucoins' home because it attempted to fine them. However, the inference can be drawn from the evidence that it decided that Provision 18, as then written, did not precisely cover the issue because the fine was withdrawn. We agree that it did not, and Copper Meadows has so acknowledged in brief and in argument.

Provision 18 was amended effective January 2014, to directly restrict such parking, yet the Aucoins continued to park their trailer in front of their home without action on the part of Copper Meadows. Derek Aucoin, Mr. Aucoin's brother testified that Mr. Aucoin, for the past thirteen years, took the trailer home any time he was off duty. He said that every time he visited Mr. Aucoin, the trailer was parked

outside of his home. In addition, photographic evidence clearly showed the trailer parked in front of the Aucoins' house on various dates from 2014 onwards. Thus, there was a reasonable factual basis for the trial court's conclusion that there was a noticeable ongoing violation of Provision 18 for more than two years prior to Copper Meadows' attempt to enforce the amended version of Provision 18.

Furthermore, the trial court, based on its explicit findings of fact, gave little, if any, weight to the testimony of two Copper Meadows' directors, who despite the fact that they made routine inspections of the subdivision, claimed that they never saw the trailer parked in front of the Aucoins' house until 2017. As such, we cannot declare this finding of fact to be manifestly erroneous. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Accordingly, the trial court judgment declaring the Aucoins' property to be free from the restriction contained in Provision 18, enjoining Copper Meadows from further attempts to enforce the same against the Aucoins' property, and ordering the return of the fine paid, is affirmed.

Based on these findings and our affirmation of the trial court judgment, Copper Meadows' remaining arguments are rendered moot.

## DISPOSITION

For the reasons specified herein, the judgment of the trial court is affirmed. The costs of this appeal are assessed against the defendant, Copper Meadows Homeowners Association, Inc.

**AFFIRMED.**

13